N. S. MACNEISH, as Treasurer of Publishers' Association of New York City (on behalf of its member, The New York Times Company), Plaintiff,

v.

NEW YORK TYPOGRAPHICAL UNION NO. 6, Defendant.

United States District Court
S. D. New York.

May 16, 1962.

Townley, Updike, Carter & Rodgers, New York City, for plaintiff.

James W. Rodgers, Andrew L. Hughes, Charles T. Bates, New York City, of counsel.

John J. Sheehan, New York City, for defendant.

FREDERICK van PELT BRYAN, District Judge.

This is an action for violation of the collective bargaining agreement between the Publishers' Association of New York City, an unincorporated association, (the Association) and its member newspapers, as employer, and the New York Typographical Union No. 6 (the Union), as representative of the composing room employees of the member newspapers. Plaintiff Macneish sues as Treasurer of the Association on behalf of its member The New York Times Company. He seeks an order: (1) compelling arbitration of a grievance in accordance with the terms and conditions of the collective bargaining agreement; and (2) restraining defendant Union from proceeding with a proposed hearing before its Discipline Committee pending the outcome of the arbitration.

The answer denies violation of the agreement and as a separate defense alleges that the agreement does not obligate defendant to arbitrate the grievance set forth in the complaint since the dispute is not arbitrable.

Jurisdiction is based on § 301 of the Labor Management Relations Act of 1947 as amended, 29 U.S.C.A. § 185, (L.M.R.A.),[1] and the United States Arbitration Act, 9 U.S.C. § 1 et seq.

This is "an industry affecting commerce" and the jurisdictional requirements of the L.M.R.A. have been met. "We need not determine whether jurisdiction might be sustained under the latter (Arbitration) act, cf. Signal-Stat Corp. v. Local 475, 2 Cir., 1956, 235 F.2d 298, certiorari denied, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428, since it is clear that Section 301 of the Labor Management Relations Act confers power upon the District Courts to compel arbitration in accordance with the terms of a collective bargaining agreement. Textile Workers Union v. Lincoln Mills, 1957, 353

1. "§ 185. (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. * * *

"(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members."

U.S. 448, 77 S.Ct. 912, [923] 1 L.Ed.2d 972." Engineers Association v. Sperry Gyroscope Company, 251 F.2d 133, 135 (2 Cir. 1957), cert. den. 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958).

Plaintiff now moves, by order to show cause, to compel arbitration and to enjoin the scheduled Union disciplinary proceeding pending an award.

It is well settled that § 301(a) of the L.M.R.A. not only confers jurisdiction to enforce collective bargaining agreements, but also provides "the necessary legal remedies." Textile Workers Union of America v. Lincoln Mills of Alabama, supra, 353 U.S. p. 455, 77 S.Ct. 912. The motion is properly brought under that section.

The facts, briefly stated, are as follows:

The collective bargaining agreement in suit was for a term from December 8, 1958 to December 7, 1960, and governed the rates of pay, hours and other conditions of employment of employees working in the composing rooms of the newspaper members of the Association. The agreement was extended and was in full force and effect during this controversy. It provided for the arbitration of "Any controversy (except as provided otherwise herein) arising under this contract. * * *."

On February 10, 1961, the chairman of the Union chapel at the New York Times and four other men employed in the Times composing room filed charges with the president of the Union against Jackson, the day shift foreman of the composing room. Pursuant to the collective bargaining agreement Jackson was required to be a member of the Union. The charges were for "un-unionlike acts" such as "wilfully harassing, disciplining, admonishing, threatening discharges, intimidating and otherwise coercing members of the composing room * * *. Jackson's tactics also include the hunting of members into the washrooms and thereupon admonishing them about time lost."

Jackson was notified of the charges filed against him by letter dated February 15, 1961. Thereafter, on February 24, the Association, on behalf of the Times, filed a grievance "arising out of the Union's unilateral action in processing a grievance against the day-shift foreman," pursuant to the collective bargaining agreement and requested "a prompt meeting to select an arbitrator to hear the matter."

Section 5 of the collective bargaining agreement provides that,

"The operation, authority and control of each composing room shall be vested exclusively in the office (of the newspaper) through its representative, the general foreman, who shall be a member of the Union. Each office shall post the name of the general foreman and the employee who will represent him during his absence. In either event the employee whose name is so posted shall be in complete charge and vested with all the authority granted by this agreement to the general foreman.

"The office, or the foreman, shall also post the names of employees who shall act as shift foremen, and such persons shall have the full authority of the foreman in supervising and directing work and may recommend the discharge of employees."

The basis for the grievance of the Times, as stated in the letter of February 24 was that,

"The nature of the Union complaint clearly indicates that the chapel action grows out of the execution of the supervisory duties of the shift foreman which have been specifically granted to him under Section 5 of the agreement."

The employer, in essence, contended that the proposed disciplinary proceedings by the Union interfered with the exclusive operation, authority and control of the composing room granted to the newspaper through its representatives, the foreman and the shift foreman, by the collective bargaining agreement. It maintained that such proceedings would therefore be in violation of the agreement

and that the question of the Union's right to take such action was within the scope of the arbitration clause of the agreement as a "controversy * * * arising under this contract."

On May 18, 1961 the Association and Times reasserted the grievance. However, on June 6, 1961 the Union refused to arbitrate under the agreement, claiming that "The controversy which brings Mr. Nathan Jackson before the Discipline Committee is not a proper one for a grievance Committee because it deals with the alleged violation of Union law by Mr. Jackson." It advised that it would proceed with the hearing before its Discipline Committee.

On October 13 the Union notified Jackson to appear at a Union Discipline Committee meeting set for October 24. At that juncture plaintiff instituted this action.

The Union's position is that employer's motion to compel arbitration must be denied on the grounds that: (a) the issue raised is not arbitrable under the collective bargaining agreement; (b) the employer is attempting to get through arbitration what it was unsuccessful in obtaining by negotiation; and (c) the employer is seeking to attack collaterally an arbitration award made in January of 1959 which determined the same question.

I turn first to defendant's initial and most substantial contention—that the issue raised by the employer is not arbitrable. It is well settled that the court here "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960). "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance * * *." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

The parties here agreed to arbitrate any controversy arising between them under their contract "except as provided otherwise" in the agreement. Applying the standards prescribed by the Supreme Court it is clear that, apart from the exception just referred to, this controversy arises under the contract.

The collective bargaining agreement in suit specifically provided that the employers, through their general foremen and day shift foremen, were to have exclusive authority and control over the composing rooms of the member newspapers and the right to supervise and direct the work of composing room employees. Jackson was the duly appointed day shift foreman and his name had been posted as the agreement provided.

The activities for which the Union sought to discipline Jackson on their face arose out of and were directly connected with the exercise of his authority, as representative of the employer, to supervise and direct the work in the composing room. The attempt by the Union to discipline Jackson for the manner in which he exercised such authority is a direct interference with the prerogatives granted to management by the agreement. The question of the right of the Union to take such steps under the circumstances is plainly a controversy "under the contract".

Any controversy arising under the collective bargaining agreement is arbitrable "except as otherwise provided" by the agreement. One of these exceptions is the provision of § 86 of the agreement that,

"It is agreed that local Union Laws not affecting wages, hours or working conditions, and the 1959 General Laws of the International

Typographical Union, shall not be subject to arbitration."

It is the position of the Union that since the charges against Jackson were preferred under Article XII, § 6 of the International Typographical Union Constitution, Article III, § 6 of the Local Union Constitution, and Article V, § 1 of the International Typographical Union By-Laws, they fall within this exception and are therefore not arbitrable.

I do not agree. The employer seeks arbitration of a controversy over whether its rights under § 5 of the collective bargaining agreement are being infringed and if so to what extent it is entitled to protection from such infringement. This it is entitled to do. It is not barred from such relief under the agreement merely because the arbitration may affect the extent and manner in which Union laws may be applicable to foremen, who are Union members, for acts arising out of the exercise of the authority expressly vested in the employers by the agreement.

By the very terms of § 86 Local Union laws "affecting wages, hours and working conditions" are not excepted from arbitration under the collective bargaining agreement. It is difficult to fathom how activities of a foreman as representative of the employer in the course of supervising and directing the work of the composing room can be viewed other than as affecting working conditions. Such activities on Jackson's part are what the Union composing room members have complained about and go directly to working conditions there.

Indeed, a complaint by Union members as to Jackson's activities as foreman would itself be a proper subject of grievance on the part of the Union as to "working conditions" and an arbitrable controversy under the agreement. The arbitration clause affords the Union appropriate and adequate redress for grievances relating to that subject.

As to the General Laws of the International Union, under Section 8 of the agreement such laws "not in conflict with this contract" govern relations between the parties but only "on conditions not specifically enumerated herein." The subject of the authority and control of the shift foreman over the composing room is specifically covered by the agreement. This controversy directly concerns that subject matter as well as working conditions in the composing room with which the agreement also deals. Whether or not the General Laws of the Union are in conflict with the agreement or govern the relations of the parties in these circumstances is plainly an arbitrable controversy arising under the contract.

There remain the contentions of the Union that the employer is attempting to get through arbitration what it failed to obtain through negotiation and that this is a collateral attack on a previous arbitration award which determined the same question.

The prior award in the Della Rocca case in 1959 involved Union disciplinary action brought against an assistant to a foreman of the Long Island Daily Press. The arbitrator held that the action of the Union in disciplining the assistant was not arbitrable. Apart from the fact that an award in another case involving different parties is not binding on the Court, the facts in the Della Rocca case are markedly distinguishable from those in the case at bar. Della Rocca was not a shift foreman granted "the full authority of the foremain in supervising and directing work" under § 5 of the agreement, as is Jackson the day shift foreman here. The Union charged that Della Rocca had usurped the authority of the general or shift foreman in violation of its laws. The employer relied on the Union laws to sustain Della Rocca's authority. It was on this basis that the arbitrator held the controversy not to be arbitrable.

What, if any, bearing the Della Rocca award has on the instant case is entirely a matter for the arbitrators.

The same can be said of the contention that the employer seeks to obtain by arbitration what he failed to get by negotiation.

■■ It is now settled that "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. pp. 582–583, 80 S.Ct. p. 1352. It is apparent from what has been already said that under that standard the employer here is entitled to an order directing arbitration. He is also entitled to a stay of the Union disciplinary proceeding pending the final determination of the arbitrator.

Plaintiff's motion to compel arbitration and for a stay of the Union disciplinary proceedings is in all respects granted.

Settle order on notice.