**BROTHERHOOD OF LOCOMOTIVE ENGINEERS et al., Plaintiffs-Appellees,**

v.

**The BALTIMORE & OHIO RAILROAD COMPANY, a corporation, et al., Defendants-Appellants.**

No. 13855.

United States Court of Appeals Seventh Circuit.

Nov. 28, 1962.

Howard Neitzert, Martin M. Lucente, Chicago, Ill., Hermon M. Wells, Philadelphia, Pa., James R. Wolfe, Chicago, Ill. (Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel), for defendants-appellants.

Burke Williamson, Chicago, Ill., Milton Kramer, Washington, D. C., Lester P. Schoene, Schoene & Kramer, Washington, D. C., for all plaintiffs-appellees.

Harold N. McLaughlin, Cleveland, Ohio, for plaintiff-appellee Brotherhood of Locomotive Engineers.

Harold C. Heiss, Cleveland, Ohio, for plaintiff-appellee Brotherhood of Locomotive Firemen & Enginemen.

Harry Wilmarth, Cedar Rapids, Iowa, for plaintiff-appellee Order of Railway Conductors and Brakemen.

Edward B. Henslee, Jr., Chicago, Ill., for plaintiff-appellee Brotherhood of Railroad Trainmen.

Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

The parties to this appeal, as described in the amended complaint and in the opinion in case No. 13876 this day filed herein, continue to be referred to in this opinion as the Organizations and the Carriers.

On August 8, 1962 the district court, by its final order, denied a second motion for a preliminary injunction made by the Organizations, which sought to enjoin the Carriers from putting into effect promulgations of revisions in work rules by the Carriers, dated July 17, 1962 and August 6, 1962, effective August 16, 1962. By the same order the court dismissed the amended complaint of the Organizations because it failed to state a claim upon which relief could be granted.

On the same day the Organizations appealed from both actions of the court.

Also on August 8, 1962, the Organizations filed in the district court a motion for injunction "pending the hearing and determining of the appeal of plaintiffs to" this court from the order dismissing the complaint as amended, to restrain the Carriers from putting into effect the promulgation of August 6, 1962, and

from making the changes therein referred to. On August 10, 1962, the court made findings of fact and conclusions of law and required and approved the Organizations' injunction bond of $10,000. On the same day the court entered an order granting the injunction during the pendency of the Organizations' appeal and the Carriers took the instant appeal therefrom.

On August 15, 1962, we denied a motion of the Carriers to dissolve and vacate that injunction and, on August 29, 1962, we required the Organizations to furnish an additional bond of $90,000 as further security therefor.

Among its findings of fact, the district court made the following:

## "VII.

"If, as claimed, the terms of the Promulgation of August 6, 1962 would be installed unlawfully, the damage to the plaintiffs and the employees they represent would be impossible to calculate and would be irreparable. Some of the injury to plaintiffs and the employees represented by them cannot be calculated in money.

## "VIII.

"The rights claimed by the plaintiffs for the employees they represent do not merely concern rates of pay, job assignments and other rules, and working conditions, but involve also the discharge of thousands of employees from positions long held by them, and the dislocation of many others, and their families, from their homes and communities.

## "IX.

"The rates of pay, rules, and working conditions which the Promulgation of August 6, 1962 would abrogate or modify have been agreed to by the plaintiffs and the railroads on a continuing basis through collective bargaining. The granting of *an injunction pending appeal will temporarily continue in effect such rates of pay, rules, and working conditions agreed to until the Court of Appeals can review* the legality of the threat to put into effect the terms of said Promulgation." (Italics supplied.)

\* \* \* \* \* \*

## "XI.

"The Court has inquired into and considered the equities of the parties herein and has further considered the equities of the general public as they would be affected by this matter. The Court has balanced the equities and found the equities of the plaintiffs and the general public greater than those of the defendants herein."

Among six conclusions of law adopted by the district court are the following:

"4. The equities in favor of maintaining the status quo during the pendency of plaintiffs' appeal substantially outweigh the equities against maintaining the status quo.

"5. The jurisdiction of this Court to grant an injunction during the pendency of this appeal exists under the provisions of Rule 62(c) of the Federal Rules of Civil Procedure and the Judicial Code and the inherent powers of the Court."

1. Rule 62(c) of the Rules of Civil Procedure, 28 U.S.C.A. Rule 62(c), provides:

"When an appeal is taken from an interlocutory or final judgment \* \* \* denying an injunction, the court in its discretion may \* \* \* grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. \* \* "

Section 2 of the Railway Labor Act (45 U.S.C.A. § 151a) states as one of its purposes:

" \* \* \* (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; \* \*."

The district court is a federal court of original jurisdiction and enjoys inherent equitable powers to be used in the exercise of its judicial discretion. It was by virtue of this inherent power that the court issued the injunction pending appeal, which is intended to prevent injuries so irreparable pending appeal to this court that a decision in favor of the Organizations in (Brotherhood of Locomotive Engineers et al. v. Baltimore & Ohio R. R. Co. et al., 7 Cir., 310 F.2d 503) "would be but an empty victory." Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1435. In that case, the court said, at 534, 80 S.Ct. at 1330:

> "It is true that preventing the Railroad from instituting the change imposed upon it the burden of maintaining what may be a less efficient and more costly operation. The balancing of these competing claims of irreparable hardship is, however, the traditional function of the equity court, the exercise of which is reviewable only for abuse of discretion. * * *"

We recognized the power of a federal court to grant an injunction to retain the status quo in major disputes on railroads (which is the kind involved here) in Hilbert v. Pennsylvania R. Co., 7 Cir., 290 F.2d 881, 884 (1961).

2. However, even though the district court had the inherent equitable power to grant the injunction pending appeal, the Carriers in this court contend that the proceedings involve a labor dispute within the terms of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., and that §§ 1 and 7 (29 U.S.C.A. §§ 101 and 107) of that Act prohibit the granting of injunctive relief in a labor dispute except in "strict conformity with the provisions of the Act; among such provisions is the requirement that the court find that unlawful acts have been threatened and will be committed or have been committed and will be continued unless restrained", and they also rely upon §§ 4 and 8 of that Act (29 U.S.C.A. §§ 104 and 108). The Carriers point out that this litigation involves a labor dispute as defined by § 13(c), chapter 6 of that Act (29 U.S.C.A. § 113(c) ch. 6). They emphasize § 1 (§ 101), which provides:

> "No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter."

They also quote from § 4 (§ 104) [1] and a part of § 7 (§ 107) [2] of the same Act.

The Organizations take issue with these contentions, and particularly they assert that § 4, *supra,* "is not applicable

---

1. § 4 reads: "* * *

"No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

"(a) Ceasing or refusing to perform any work or to remain in any relation of employment;

"(b) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;

"(c) Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

"(d) By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;

"(e) Giving publicity to the existence of, or the facts involved in, any labor

2. See Note 2 on Page 517.

because it prohibits injunctions against conduct unrelated to the conduct enjoined by the injunction which is the subject of this appeal." They also state that § 7 "limits injunctions against conduct unrelated to the conduct enjoined by the injunction pending appeal."

The Organizations rely upon Hilbert v. Pennsylvania R. Co., ante 516, as sustaining the proposition that the Norris-LaGuardia Act does not prevent the granting of an injunction to require an employer to retain the status quo.

Confronted with these conflicting contentions of the parties, we realize that our opinion in No. 13876, 310 F.2d 503, when followed by the issuance of our mandate, will dispose of that appeal in this court.

Does the Norris-LaGuardia Act bar the pending injunction against the Carriers? We have made a thorough examination of the Act and its pertinent legislative history. The overall purpose of the Act was stated by Congress in a most unusual manner. In § 2 of the Act itself, 29 U.S.C.A. § 102, under the heading "Public policy in labor matters declared", enacted in 1932, Congress declared that in

"* * * the interpretation of this chapter and in determining the jurisdiction and authority of the courts of the United States, as such jurisdiction and authority are defined and limited in this chapter, the

public policy of the United States is declared as follows:

"Whereas under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, *the individual unorganized worker is commonly helpless* to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, *it is necessary that he have full freedom of association,* self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that *he shall be free from the interference,* restraint, or coercion of *employers of labor,* or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; *therefore, the following definitions of and limitations upon the jurisdiction and authority of the courts of the United States are enacted. * *"* (Emphasis supplied.)

While the Carriers earnestly argue that it is apparent from the legislative history and the terms of the Act that

---

dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

"(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

"(g) Advising or notifying any person of an intention to do any of the acts heretofore specified:

"(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

"(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title."

2. § 7 reads: "* * *

"No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained * * *."

Congress sought to achieve the purposes of the Act by limiting the participation of federal courts in labor disputes, regardless of whether the conduct complained of was that of employers or employees, our study of that history and the language of the Act above set forth convinces us that the purpose of Congress in this respect was to protect only employees and unions. We find nothing in the statement of policy to indicate any intention to deny jurisdiction to issue injunctions against employers. Two isolated exceptions to this overall purpose appear in the Act and serve to emphasize that they are exceptional provisions. Thus in § 3(a) (b) (§ 103(a) and (b)), there are provisions declaring unenforcible any agreement not to join, as well as any agreement to withdraw from, a labor organization or an *employer* organization. In the other instance, in § 4(b) (§ 104(b)), it is declared that no United States court should have jurisdiction to issue an injunction against any person becoming a member of a labor organization or an *employer* association.

■ The enactment of the Act was, of course, the responsibility of Congress, and not that of this court. That Congress may have been intent upon shielding organizations of employees from injunctions rather than employers was and is a matter within its province. The same can be said of the exemption of labor organizations from the sanctions of antitrust laws. Those are matters over which the courts have no control, in the absence of a constitutional attack.

The language used clearly negatives any intention to recognize any general reciprocity of rights of capital and labor.

Essentially the Act is frankly a charter of the rights of labor against capital.[3]

The Carriers rely on our decision in Elgin, J. & E. Ry. Co. v. Brotherhood of Railroad Trainmen, 7 Cir., 302 F.2d 545 (1962). However, while the district court there entered an injunction pending appeal, it was a restraining of the *unions* there involved from carrying out a strike which they had called. Thus we said, at 548:

"* * * The injunction was issued at the expense of the unions. In our view, the sweeping provisions of the Norris-LaGuardia Act deprived the District Court of jurisdiction to issue the temporary injunction pending the appeal.

\* \* \* \* \* \*

"The temporary injunction issued pending appeal should not have been entered. \* \* \*"

What we have already said, as to the nonreciprocal policy as well as the actual language of the Norris-LaGuardia Act, clearly distinguishes that case from the case at bar.

■ We conclude that the Norris-LaGuardia Act did not deprive the district court of the power to grant the injunction pending appeal.

■ 3. Finally we find and so hold that the district court did not abuse its discretion in granting the injunction pending appeal.

For the reasons which we have stated, the order granting an injunction during the pendency of the Organizations' appeal in case No. 13876 is affirmed.

Order affirmed.

3. Our use of the word "capital" is not original with us or contemporaneous with present labor relief discussions. It harks back to the 1932 era when the Act was under consideration in Congress. There, in Senate Report # 163, 72nd Congress, First Session (1932) p. 19, the accustomed language of the era was used when there was a reference to "organizations of labor and organizations of capital". It is recalled that in its colloquial use in those days the word "capital" was, to say the least, a provocative term.