LOCAL UNION 499 OF the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO an Unincorporated Association, and D. R. Huffman, John Hood, William Lamkins, Dale Bassett, and Jerry Dunagan, Plaintiffs,

v.

IOWA POWER AND LIGHT COMPANY, a Corporation, Defendant,

and

United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada and its Local Union 33, Defendant-Intervenors.

Civ. No. 5–1457.

United States District Court
S. D. Iowa,
Central Division.
Jan. 6, 1964.

Lex Hawkins, Des Moines, Iowa, for plaintiffs.

D. J. Fairgrave, Des Moines, Iowa, Howard P. Robinson, Chicago, Ill., Kent M. Forney, James L. Rogers, Des Moines, Iowa, for defendant.

Patrick C. O'Donoghue, Donald J. Capuano, Washington, D. C., and D. J. Goode, L. R. Voigts, Des Moines, Iowa, for defendant-intervenors.

HANSON, District Judge.

This is a ruling on a motion for a temporary injunction. While the detailed facts of this case are quite complicated, the principal facts are clear. The plaintiff, Local Union 499 of the International Brotherhood of Electrical Workers, AFL–CIO, entered into a collective bargaining agreement with the defendant, Iowa Power and Light Company. This agreement was entered into in August 1962 and is to continue in effect until August 1964. In 1961 and 1962, the Iowa Power and Light Company started a reorganization and modern-

ization program. This called for considerable construction work and the plaintiff union admitted that it was impossible for the union to do all of this work. Certain of this work called "interference work" the union has claimed should be done by the maintenance employees of Iowa Power and Light Company, which employees are represented by the plaintiff union. Iowa Power and Light Company has entered into a number of contracts with other companies. These other companies have been and are at present doing work on the reorganization and modernization program. Some of the employees of the companies doing this work are members of United Association of Journeymen and apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada and its Local Union 33.

At one time, some of the work in removal of existing pipe and putting in temporary pipe was assigned to Local 499. Local 33 then struck. The parties stipulated to submit this dispute to the NLRB in a § 10(k) (Title 29, Section 160(k)) hearing. This concerned only the work on boiler No. 6 and no injunction is now being sought with respect to the work on boiler No. 6. The NLRB decision was in favor of Local 499. Local 499 claims that the disputed work is similar to work on boiler No. 6 which the NLRB examiner held should be assigned to Local 499. Local 33 and the Iowa Power and Light Company have notified the NLRB that they cannot abide by the decision.

Two stewards and the business agent for Local 499 testified that the Iowa Power and Light Company is now allowing third-party contractors to do work which was formerly being done by the men of Local 499. The testimony was that this included removing of existing equipment in connection with boiler No. 1, insulation work on pipes, replacing temporary electrical work and trimming trees. The Iowa Power and Light Company claims that this is new construction and not normal maintenance. It is

also claimed by Iowa Power and Light Company that before Local 499 could do this work additional men would have to be added to the Local 499 bargaining union and that overtime would have to be given to the men in Local 499. Iowa Power and Light claims that this is really a dispute between Locals 499 and 33 and that they want the work done as a complete job and not divided up and done piecemeal. In the past, new construction was let out to third-party contractors and Local 499 is not claiming any new construction.

The facts as to whether or not any men who could do the claimed work have been laid off was somewhat disputed. There was testimony that there had been no reduction in maintenance personnel during 1962 and 1963. However, there was evidence that between December 31, 1961, and December 1962 there was a reduction of five men at Des Moines Power Station called DPS#2 and up to October 1963 there have been six reduced. The business agent testified that men have been laid off who could do the claimed work and that the men working could do more of the work. The laid off men referred to line men who had done the tree trimming. It was claimed by the union that some men in the maintenance department have not been replaced. The refilling of jobs is usually handled by grievance procedure. Exhibit #32 is a grievance filed at DPS#2. The testimony indicated that some of the laid off men would have to have their classifications changed in order to do the claimed work. There is testimony that the union has not suggested to Iowa Power and Light Company that classifications be changed.

The testimony was that this increase in work is going to be temporary and end when the modernization and reorganization plan is finished. At that time, there will be a reduction in operations personnel but not of the present maintenance personnel and this will happen regardless of who does this construction work. There is also $1,800,000.00 worth of deferred maintenance work which the

Company says they are anxious to get finished.

It is only the maintenance personnel in Local 499 who are complaining. They are claiming only the normal maintenance, that is, the work which in the past has been done by them. They are not claiming the work on new locations. They are not claiming the certified welding nor the necessary tie-ins to existing pipes in the work on the boilers.

The defendants moved to dismiss the plaintiffs' case and this motion included at least sixteen separate subdivisions.

 Courts are hesitant to grant a temporary injunction which would in effect give the plaintiff the relief asked for in the main case and it can be done only on a clear showing of reasonable probability of success in the main case. Local 453 v. Otis Elevator, D.C., 201 F. Supp. 213; Fried v. Glen Electric Heater Corp., D.C., 198 F.Supp. 248; Local 180 etc., v. J. I. Case Co., D.C., 185 F.Supp. 130. The relief asked for in the main is specific performance of the collective bargaining contract. It is the burden of showing a reasonable probability of attaining this relief which the plaintiffs must carry. The applicable parts of the contract are:

> "Article VI, Section 10. The Company will not let out to contractors the operation, maintenance, repair and normal construction of equipment owned or operated by the Company until the Business Manager of the Local Union has been duly notified and every reasonable effort has been made to provide Company crews for the performance of such work."

> "Article IX, Section 2. The Company shall have the right to determine how many men it will employ or retain and shall also have the right to exercise full control and discipline in the interest of good service and the proper conduct of its business, subject to the terms and provisions of this Agreement."

and Article I, Section 2.

The plaintiffs are in effect asking for specific performance at this time. The plaintiffs' request is stated on page 6 of their brief as follows: "An order by this Court directing the Company to assign 'Interference Work' and the Tree Trimming operations pursuant to Article VI, Section 10 and Article I, Section 2 of the Contract and setting out what is sufficient notice and reasonable effort to provide Company Crews would not be difficult. This is the immediate relief the Plaintiffs request."

The collective bargaining contract would seem to generally leave up to the Company the determination of how many men it will employ or retain and the contract appears to be silent as to any guarantee of overtime. Such an interpretation, however, may be inconsistent with Article VI, Section 10, where the Company has agreed not to let out maintenance, repair, and normal construction of equipment until every reasonable effort has been made to provide Company crews for the performance of such work. The contention of Iowa Power and Light Company is that they are not required by Article VI, Section 10, to increase their work force nor to give the present crew overtime.

 Normally the proof required for specific performance must be clear and convincing and the breach of the contract must be certain. Also the party asking for specific performance must show a clear willingness to comply with all provisions of the contract. The provision of the contract in question in this case has been considered by many courts. This strict rule on proof of specific performance seems to be somewhat relaxed in labor cases, at least where specific performance of the arbitration clause is concerned. See United Steelworkers v. Warrior & Gulf Navigation, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; MacNeish v. New York Typographical Union No. 6, D.C., 205 F.Supp. 558. Where there is no arbitration clause, the question of enforcing the contract is for the court. International Union, United Auto etc. v. Webster Electric Co.,

7 Cir., 299 F.2d 195. The standards of interpretation on the clause of the contract has been the source of much litigation. In United Steelworkers of America v. New Park Mining Co., 10 Cir., 273 F.2d 352, the court said:

"And so, there is good authority for saying that whether the Company actually quit business or merely decided to subcontract its work by a leasing arrangement, it had the absolute right to do so, even though its action brought the contract to an end before its expiration date. But we think this construction of a collective bargaining contract ignores the covenant of good faith and fair dealings which must inhere in every collective bargaining contract if it is to serve its institutional purposes.

"In most instances, where the parties have committed the interpretation and application of their bargaining contract to the arbitral process, the arbitrators have interpreted the contracts to exclude subcontracting of work usually performed by employees on the premises in the absence of an agreement to that effect. And contracts have been so interpreted in the face of restrictive management function provisions."

57 A.L.R.2d 1399 annotates this subject. However, without further hearing on several of the matters set out in this opinion, this is not the proper time to give the final interpretation of this contract.

Article I, Section 2, provides that schedules, number of men, and job content which are in effect at the time of the signing of the new contract, and likewise, all of those covered by the contract shall remain in force and effect as they exist or as they are covered by the contract. The contract further states that the parties agree to maintain the status quo during the discussions and processes on attempts to mutually agree on the change, and that in the event that a mutual determination is not arrived at, then the parties agree to remain in status quo until a method for solution is agreed upon. It would appear that the parties are not bound to maintain the status quo after they have failed to mutually agree either on the change or upon a method for solution. Article I, Section 2, would make these changes matters subject to collective bargaining except wherein they are already covered by the contract. This brings the discussion back to Article VI, Section 6, and Article IX, Section 2. The parties probably could not be enjoined under Article I, Section 2, since they have already conclusively failed to agree either on the changes or upon method of solution. This section seems to bind them to maintain the status quo only until such failure results.

If the Company is not required under Article VI, Section 10, to give overtime or to employ additional men, Article VI, Section 10, would at the most require the Company to allow those men laid off to do the maintenance work. It appears that the only persons laid off were several linemen who it is claimed can do tree trimming. At the most, there are not very many such men that could be called back. The contract makes reasonable effort the test.

The Company's testimony is that the present work force cannot do all the work and that the work contracted out is a complete job and not divided up. One disputed point is whether reasonable effort requires dividing up the work, that is, contracting out part and allowing Local 499 men to do part.

Another disputed issue is whether the men called back plus overtime for other employees could do this work. There has been no evidence as to the man hours of work necessary for any particular part of the claimed work nor how many men any of the third-party contractors are now using.

Two things seem clear from the present state of the record. First, whether or not the Company is obligated under

the contract to hire new men or give the existing men overtime depends upon the construction of the contract when reading Article VI, Section 6, together with the rest of the contract. As already shown, Article VI, Section 6, and Article IX, Section 2, are somewhat contradictory and thus creates an ambiguity. At the hearing, the union did not contend very seriously that it was necessary to hire new men. Second, the plaintiffs have not shown that there is a sufficient reasonable probability that "reasonable effort" in Article VI, Section 6, would require the Company to give the present crew overtime or to call back the men laid off which would justify giving a temporary injunction. This doesn't mean that the union will not be granted this relief when the final findings are made, but rather it means that the court must hear all the evidence that can be offered on this point plus finally resolving the disputed contentions of the Company before these final findings can be made.

The defendants argue that the pending proceedings before the NLRB preclude injunctive relief. This would seem to be so if the requested injunction covered the same work as was submitted to the Board. However, the union has not requested an injunction in connection with the work on boiler #6. That was the only work that the NLRB ruled on. The defendants claim that the alleged breach of contract which is the substance of this action is identical to the alleged breach now before the NLRB. The view now accepted is that there can be concurrent jurisdiction between the NLRB and the courts, but in Carey v. General Electric Co., 2 Cir., 315 F.2d 499, 511 note 12, the court notes the possibility that if the Board is already seized of jurisdiction over a complaint by one of the parties, the District Court might defer jurisdiction. But it does seem that the fact that the NLRB ruled on the work on boiler #6 and the NLRB regulations with respect to continuing supervision do not mean that the disputes on the other work is before the Board. The only way the NLRB can take jurisdiction is if an unfair labor practice charge is filed.

The defendants claim that the plaintiffs here have not exhausted their contract remedies. The union did file grievances on their claims in relation to boiler #6. They did not file grievances on their other claims because they believed it would be futile to do so. The defendants cite Drake Bakeries, Inc. v. Local 50 American Bakery and Confectionery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474, on this problem. In that case and in Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, the contract remedy required to be exhausted was arbitration. In this case, the Company does not want to arbitrate the dispute. The defendants' argument wherein Parks v. International Brotherhood of Electrical Workers, 4 Cir., 314 F.2d 886, and Rutland Railway Corp. v. Brotherhood of Locomotive Engineers, 2 Cir., 307 F.2d 21, are cited seems to be that Local 499 has not made a good faith effort to settle the dispute. It is not necessary to now rule on this issue.

The defendants in their motion claimed that this dispute would come under NLRB jurisdiction. This is a very serious issue. In Local No. 1505 International Brotherhood of Electrical Workers v. Local Lodge No. 1836, 1st Cir., 304 F.2d 365, both unions were involved with Raytheon in a dispute over which union's employees should do certain work. Local 1836 claimed that it was not seeking to represent other employees but only that it claimed that its own employees should do certain work hitherto performed by Local No. 1505 men. The court recognized the view expressed in many cases that the existence of an unfair labor practice does not necessarily pre-empt the District Court's jurisdiction under Title 29 U.S.C. § 185. The court then held that this was a matter of representation and that exclusive jurisdiction to resolve that conflict between the parties is in the NLRB. The court said that certification and representation are both

bottomed upon work categories and that a decision by an arbitrator might invade the certification of the other union. The court held that a union may not attempt to extend its representation and certification by contract because adjustments in certification are exclusively within the authority of the NLRB. The facts of that case are in many ways very close to the present case. Local 33, International Hod Carriers, etc. v. Mason Tenders District Council, etc., 2 Cir., 291 F.2d 496, was distinguished. In that case, there was a work assignment dispute between Local 33 and Local 23 as to which had the right to designate the stop steward on a particular job. It was distinguished because both Locals belonged to the same union and it was thus an intraunion dispute. It is interesting to note that in Local 33, International Hod Carriers, etc. v. Mason Tenders, supra, the reason why the court did not say that the NLRB had exclusive jurisdiction is that the court felt that the NLRB would not hear the case in a Section 10(k) hearing. In the present case, the opposite seems to be the fact. Local No. 1505 v. Local Lodge No. 1836 was apparently settled. It was vacated per stipulation and thus became moot. See Local Lodge No. 1836, Dist. 38, International Assoc. of Machinists v. Local No. 1505 International Brotherhood of Electrical Workers, 372 U.S. 523, 83 S.Ct. 886, 9 L.Ed.2d 965; Black v. Amen, 355 U.S. 600, 78 S.Ct. 530, 2 L.Ed.2d 523; United States v. Munsingwear, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36; and 315 F.2d p. 511, note 12. There are numerous other District Court opinions on this point. Some are difficult to reconcile.

There are several other decisions where the courts have considered that interpretation of provisions restricting the contracting out of work has been within the province of the courts and the arbitrators. However, in those cases, there did not seem to be conflict between two unions as is present in this case. The factor that might distinguish the present case from the situation that existed in Local No. 1505 v. Local Lodge No. 1836, supra, is that there the employees of both unions were clearly working for the same employer. Until evidence as to whether or not the decree by this court would in effect adjust the certification of Local 33 and Local 499, this court could not grant an injunction. A factor which has bothered some courts in saying that the NLRB has exclusive jurisdiction where two unions are involved is that they are not certain that the NLRB could hear and decide the case. N. L. R. B. v. Radio and Television Broadcast Engineers, etc., 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302, and the NLRB decision already given in this matter indicate that the Board can and will hear this matter if an unfair labor practice is involved. It also appears that the Board considering criteria like an arbitrator is better able to decide these matters. It is not now necessary to decide whether this court will defer part of this matter to the jurisdiction of the NLRB.

The defendants claim that the dispute in this case is a labor dispute within the meaning of the Norris-LaGuardia Act but does not come within the exceptions to that Act which would allow an injunction. There is a dispute in the authorities on this issue. In the following decisions, the court decided that the Norris-LaGuardia Act does not prevent the use of an injunction to enforce the collective bargaining contract: Independent Petroleum Workers v. Esso Standard Oil Co., 3 Cir., 235 F.2d 401; Milk and Ice Cream Drivers etc., v. Gillespie Milk Products Corp., 6 Cir., 203 F.2d 650; Local 19 Warehouse, etc. v. Buckeye Cotton Oil Co., 6 Cir., 236 F.2d 776. See also Commercial Telegrapher's Union v. Western Union Telegraph Co., 53 F.Supp. 90, and Allied Oil Workers v. Ethyl Corp., 5 Cir., 301 F.2d 104, 105. Contrary to these decisions are several like Local 861 etc., v. Stone & Webster, D.C., 163 F.Supp. 894.

It is not at all clear that Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 is inconsistent with Independent Petroleum Workers v.

Esso, supra. The courts are splitting on whether the Norris-LaGuardia Act was designed only to prevent injunctions against unions and union members. Compare Brotherhood of Locomotive Engineers v. Baltimore & Ohio R. Co., 7 Cir., 310 F.2d 513, with Clune v. Publishers' Association of New York City, D.C., 214 F.Supp. 520.

The defendants contend that indispensable parties have not been joined. The court has tentatively allowed Local 33 to intervene in this action. Local 33 represents some of the employees of contractors doing or about to do disputed work. The right of Local 33 which might be affected is the right to represent the employees who do the disputed work. In some cases where more than one union was disputing with an employer over which union should furnish the employees for certain work, the courts felt that each union had the right to a two party arbitration and there did not have to be a three party arbitration.

Possibly the same test should be applied in determining whether or not Local 33 has a right to intervene because settling disputes over representation among unions is the province of the NLRB.

■■■ The defendants claim that there is no showing of irreparable injury and that it has not been shown that there is no adequate legal remedy. Money damages are normally an adequate remedy but not always. An adequate remedy at law means a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as a remedy in equity by injunction. Where ascertainment of damages is impossible, or nearly so, Caddy-Imler Creations v. Caddy, 9 Cir., 299 F.2d 79, or where there is a likelihood of such recurring and constant injury, damages may not be an adequate remedy. Rank v. Krug, D.C., 142 F.Supp. 1; Fox v. Krug, 4 Cir., 161 F.2d 1013. These cases state the general rule. See 28 Am.Jur. Injunctions, Section 48, and 43 C.J.S. Injunctions § 23 b. The Iowa court accepted this rule in

Miller v. Lawlor, 245 Iowa 1144, 66 N.W. 2d 267, 48 A.L.R.2d 1058.

The contract in this case expires in August 1964. No case has come to the attention of this court which is factually similar to the present case. Richard H. Oswald Co. v. Leader, D.C., 20 F.Supp. 876, involves damages to the Company caused by the union. At any rate, the union has not yet shown that damages will be difficult to determine. At this time, the union was not shown to be suffering from such irreparable injury as would justify a temporary injunction.

■■■ Growing out of the strike of Local 499, Iowa Power and Light Company filed in the State Court a damage case against Local 499. Iowa Power & Light Co. now claims that this case should have been filed as a counterclaim in that State Court action. The general rule is that only mature claims are subject to compulsory counterclaim rules. Cold Metal Process Co. v. United Engineering & Foundry Co., Cir., 190 F.2d 217; Cyclotherm Corp. v. Miller, D.C., 11 F.R.D. 88; Hartford Accident & Indemnity Co. v. Levitt & Sons, Inc., D.C., 24 F.R.D. 230. Also, it may be that Rule 13 cannot be used to prevent a suit in federal court under Title 29, Section 185. See Rule 65(e). A plaintiff's claim should not be dismissed on ground that it should have been raised as a compulsory counterclaim in a prior action, where such prior action is still pending and has not proceeded to judgment. Bellmore Sales Corp. v. Winfield Drug Stores, Inc., D.C., 187 F.Supp. 161.

The defendants contend that the third-party contractors should be joined as indispensable parties. The facts on this matter have not been sufficiently set out for the court to make a determination at this time as it has not been shown to what extent their employees would be replaced or to what extent their contracts with Iowa Power & Light Company might be impaired.

Gunnar v. Town of Montezuma, 228 Iowa 581, 293 N.W. 1, and Wright v. Standard Oil, 234 Iowa 1241, 15 N.W.2d

275, are not squarely on point but it hasn't been shown that the present case does not fall within this rule, and since this is a jurisdictional question, this is another reason why a temporary injunction cannot now be granted.

Accordingly, the court concludes that the motion by the plaintiffs for temporary injunction should be denied and, accordingly, a judgment will be entered.

It is ordered that the foregoing shall constitute the findings of fact, conclusions of law, and order for judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.