**UNITED STATES of America, Plaintiff,**

v.

**FLORIDA EAST COAST RAILWAY COMPANY, and William B. Thompson, Jr., President of Florida East Coast Railway Company, Brotherhood of Locomotive Firemen and Enginemen, AFL–CIO, Brotherhood of Railroad Trainmen, AFL–CIO, Brotherhood of Locomotive Engineers, Order of Railway Conductors and Brakemen, AFL-CIO, Defendants.**

Civ. A. No. 1063–63.

United States District Court
District of Columbia.

May 7, 1963.

John W. Douglas, Asst. Atty. Gen., Civ. Div., Harland F. Leathers, Frederick B. Abramson, Attys., Dept. of Justice, for plaintiff.

William B. Devaney, Washington, D. C., for defendant Florida East Coast Ry. Co. and others.

Milton Kramer, Lester P. Schoene, Schoene & Kramer, Washington, D. C., for defendant Brotherhoods.

Edward J. Hickey, Jr., Mulholland, Hickey & Lyman, Washington, D. C., for defendant Order.

YOUNGDAHL, District Judge.

This cause having been heard by the Court on the Motion of plaintiff the United States of America for a preliminary injunction the Court makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. On November 2, 1959, a group of more than 200 railroads including defendant Florida East Coast Railway Company (hereinafter referred to as "Florida") served notice pursuant to Section 6 of the Railway Labor Act (45 U.S.C. § 156) on the defendant Unions of intended changes in work rules. This notice by the railroads resulted in a

threat of a strike against the railroads by defendant Unions and attempts were immediately made to resolve the disputes without strikes.

2. On October 28, 1959, Florida executed a power of attorney authorizing the Southeastern Carriers Conference Committee to represent Florida in negotiations with the Unions with respect to the changes in work rules announced by the Carriers on November 2, 1959.

3. On October 17, 1960, the Carriers and the Unions entered into an agreement which was approved by then Secretary of Labor Mitchell for the appointment of a Presidential Commission to investigate the dispute and report to the President. The Presidential Commission reported on February 28, 1962, but no agreement between the parties resulted.

4. On May 21, 1962, the Unions made application for the mediation services of the National Mediation Board pursuant to Section 5 of the National Railway Labor Act (45 U.S.C. § 155). The Mediation Board acted promptly, docketed the matter as National Mediation Board Case No. A-6700 and proceeded with mediation. More than 30 meetings between representatives of the Carriers and the Unions were held under the auspices of the National Mediation Board. However, the parties were not able to reach agreement and after arbitration had been proffered and refused the Mediation Board on July 16, 1962, terminated its services.

5. The Carriers immediately noticed the proposed changes to become effective on August 16, 1962. On July 26, 1962, the Unions filed suit against the Carriers in the District Court for the Northern District of Illinois at Chicago. On August 10, 1962, the District Court issued an order dismissing the complaint but at the same time issued an injunction restraining the Carriers from putting into effect the proposed changes in work rules during the pendency of appeal (Brotherhood of Locomotive Engineers v. Baltimore & O. Railroad et al., 51 Labor Relations Reference Manual 2026). The United States Court of Appeals for the Seventh Circuit on November 28, 1962, 310 F.2d 513, affirmed the District Court and the injunction pending appeal was continued in effect pending the disposition of the case by the Supreme Court (Brotherhood of Locomotive Engineers v. Baltimore & O. Railroad et al., 372 U.S. 284, 83 S.Ct. 691, 9 L.Ed.2d 759). On March 4, 1963, the Supreme Court affirmed the Court of Appeals holding that both the Carriers and the Unions had exhausted the statutory procedures and were then "relegated to self-help * * * subject only to the invocation of the provisions of § 10 [of the Railway Labor Act] providing for the creation of an Emergency Board." Brotherhood of Locomotive Engineers v. Baltimore & Ohio Railroad Company, 372 U.S. 284, 83 S.Ct. 691, 9 L.Ed.2d 759.

6. The Southeastern Carriers Conference Committee represented Florida along with several other railroads in the national handling of the dispute at all stages after November 2, 1959, until March 12, 1963, including the agreement of October 17, 1960, the proceedings before the Mediation Board and as a party to the litigation in the District Court for the Northern District of Illinois.

7. After the Supreme Court decision of March 4, 1963, the Mediation Board made an arrangement as to notification with respect to the discharge of the injunction in the District Court and the effective date which the Carriers would fix for the changes in work rules; and the Mediation Board on April 2, 1963, in accordance therewith received a telegram from J. E. Wolfe, Chairman of the National Railway Labor Conference which read:

"The injunction restraining the Carriers from making their second promulgation of revised rules effective was dissolved by the United States District Court for the Northern District of Illinois, Eastern Division, at 9:30 A.M. today. This will be notice to you that the carriers will make this promulgation of revised rules effective at 12:01 AM Monday, April 8, 1963. It is our

understanding that the National Mediation Board will immediately certify to the President of the United States that an emergency exists without the formality of the unions setting a strike date. Please ackowledge."

This telegram was dated April 2, 1963, and received by the Mediation Board about noon on that day.

8. On the same day, April 2, 1963, at about noon the Mediation Board by letters advised the President that the Carriers had notified the Unions that the changes in rules would be made effective at 12:01 AM, April 8, 1963, and recommended that appointment of an Emergency Board to investigate the dispute pursuant to Section 10 of the Railway Labor Act. At the same time the Mediation Board advised Mr. Wolfe of the recommendations to the President.

9. On April 3, 1963, Mr. Wolfe advised the Mediation Board that notice to him of the Executive Order creating the Emergency Board would be sufficient as notice to all railroads involved and that no separate notice need be given to any of the Carriers Conference Committees.

10. At about 6 PM on April 3, 1963, the President issued Executive Order 11,101 (28 F.R. 3305) creating Emergency Board No. 154. Florida East Coast Railway is named in Executive Order 11,101 as a party to the dispute to be investigated by the Emergency Board. Emergency Board No. 154 is now investigating the dispute and has not yet made its report to the President.

11. On March 12, 1963, Florida sent a letter addressed jointly to Mr. McRee, Chairman of the Southeastern Carriers Conference Committee and to Mr. J. E. Wolfe, Chairman of the National Railway Labor Conference canceling the power of attorney for national handling of the dispute which it had granted on October 28, 1959, to the Southeastern Carriers Conference Committee. Florida's letter of March 12, was acknowledged by Mr. McRee on March 26, 1963, by a letter addressed to Mr. Ball, Chairman of

the Board, Florida East Coast Railway with a copy to Mr. Wolfe.

12. No notification of Florida's cancellation of its power of attorney or its attempt to withdraw from national handling was given to the Mediation Board by Florida or anyone else prior to April 4, 1963.

13. By a notice issued at about 10 AM, April 2, 1963, Florida advised the General Chairmen of the defendant Unions that Florida would place the proposed changes in rules in effect at 12:01 AM, April 3, 1963. As a result of this notice the defendant Unions issued strike notice against Florida effective 12:01, April 5, 1963.

14. There has been no change in the operation of the company since the strike notice effective April 5, 1963, issued by defendant Unions since Florida's property has been struck by non-operating unions since January 23, 1963, during all of which time the members of the defendant operating Unions have refused to cross picket lines.

15. The changes in work rules which Florida purported to put into effect by its notice of April 2, 1963, include those changes served by Florida on or about August 6, 1962, pursuant to the original Section 6 notice of November 2, 1959, except item I. These are the same changes which have been involved in the national handling of the dispute by the Presidential Commission and by the Mediation Board in case No. A–6700 and in the litigation which culminated in the Supreme Court decision of March 4, 1963.

16. Florida's notice making the changes in work rules effective and the Unions' strike notices constitute changes in the conditions out of which arose the dispute presently being investigated by Emergency Board 154.

17. The Mediation Board during the period in which it was performing its statutory functions resulting in a recommendation to the President to appoint an Emergency Board under Section 10 of the Railway Labor Act had no reason to

**328**

believe that Florida had withdrawn from national handling with respect to the dispute involved and Florida knew or should have known that the Mediation Board had a direct and vital interest in such information by reason of its duties under the Railway Labor Act. Florida had a responsibility to notify the Mediation Board of Florida's action so that the Mediation Board could act timely under Section 10 of the Railway Labor Act and Florida failed to discharge that responsibility.

18. The defendant Unions through their counsel stated in open Court that they will voluntarily withdraw the strike notices effective April 5, 1963, provided Florida is enjoined from continuing in effect the notice of April 2, 1963.

19. Florida through its counsel indicated in open court that its chief reason for withdrawing from national handling of the dispute involved was its desire to present its own problems to an Emergency Board.

20. Florida's issuance of the notice of April 2, 1963, making the changes in work rules effective on April 3, 1963, and the resulting strike notice issued by defendant Unions jeopardizes the peaceable settlement of the dispute committed for investigation to Emergency Board No. 154 and increases the possibility of a nationwide railroad strike.

### Conclusions of Law

1. The Court has jurisdiction of the subject matter of this suit and of the parties. The jurisdiction of this Court to grant an injunction exists under the provisions of the Railway Labor Act, 45 U.S.C. § 151 et seq., Rule 65 of the Federal Rules of Civil Procedure and the Judicial Code and the inherent powers of the Court.

2. Florida's action in issuing the notice of April 2, 1963, putting the changes in work rules into effect on April 3, 1963, and the resulting strike notices issued by defendant Unions violate the purposes, provisions and operation of the Railway Labor Act, particularly Section 10 (45 U.S.C. § 160).

3. Florida's action in issuing the notice of April 2, 1963, and the resulting strike notices issued by defendant Unions jeopardize the peaceable settlement of the disputes committed for investigation to Emergency Board No. 154 by Presidential Executive Order 11,101 (28 F.R. 3305) and threaten irreparable injury to the public interest for which there is no adequate remedy at law.

4. The equities in favor of enjoining the defendants from continuing in effect the notice of April 2, 1963, issued by Florida and the strike notices issued by the defendant Unions far outweigh the equities against issuing the injunction.

5. The injunction filed herewith shall be conditional upon the right of Florida to participate fully in the proceedings before Emergency Board No. 154 and shall be without prejudice to Florida's asserted independent bargaining position with respect to associations of other railroads.

6. Plaintiff, the United States of America, is entitled to the injunction issued herewith.