**FLORIDA EAST COAST RAILWAY COMPANY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**UNITED STATES of America, Appellant,**

v.

**FLORIDA EAST COAST RAILWAY COMPANY, Appellee.**

No. 22134.

United States Court of Appeals
Fifth Circuit.

July 21, 1965.

William B. Devaney, Washington, D. C., J. Turner Butler, Jacksonville, Fla., Steptoe & Johnson, Washington, D. C., of counsel, for Florida East Coast Ry. Co.

Neal Rutledge, Allan Milledge, Miami, Fla., for intervenors, eleven railway brotherhoods.

Walter H. Fleischer, Atty., Dept. of Justice, Washington, D. C., William J. Hamilton, Jr., Asst. U. S. Atty., Jacksonville, Fla., Sherman L. Cohn, Atty., Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Edward F. Boardman, U. S. Atty., for the United States.

Before TUTTLE, Chief Judge, and EDGERTON,* and SMITH,** Circuit Judges.

TUTTLE, Chief Judge:

This is another chapter in the long dispute between the Florida East Coast Railway Company and its employees. It comes to us by an appeal by the Railway from a preliminary injunction entered by the district court. That injunction, entered after the decision by this Court in Florida East Coast Railway Company v. Brotherhood of Railway Trainmen, 5th Cir., 336 F.2d 172, purports to put into effect what we there said would be permissible deviations from the collective bargaining agreements during the continuance of a strike. The dispute which brought about the suit in the earlier case and which caused the United States to file the suit in the instant case, is one and the same except that the 11 non-operating unions whose members will be the beneficiaries under the present suit were the employees who went on strike on January 23, 1963, whereas the Brotherhood of Railway Trainmen, the plaintiff in the earlier case, was not on strike but its members observed the picket lines and thus were in substantially the same position and desirous of similar relief.

■ On the record there before us we made a number of holdings which, unless changed in this case, are in effect the law of the case. These holdings were included in the last full paragraph of the opinion, 336 F.2d 172, 182, which we here quote:

"* * * The FEC is free to operate under the 1949 collective bargaining agreement as amended by the November 2, 1959, notice, but FEC may not institute changes in rates of pay, rules and working conditions encompassed by the July 31, 1963, and September 25, 1963, notices until the statutory procedures are exhausted. To do so would be to frustrate the statutory mechanism for orderly settlement of major disputes. This portion of the District Court's holding is clearly correct. It is, however, free to institute and maintain such employment practices, etc. as are, and continue to be, reasonably necessary to effectuate its right to continue to run its railroad under the strike conditions. We do not express any opinion as to the outcome of the District Judge's examination of proposed changes under the select, item-by-item approach that we articulate. However, since he has enjoined the FEC from operating under any terms except those embodied in the pre-November 2, 1959, agreement, we think the most rational approach is to continue our stay of March 17, 1964, until the District Court has an opportunity to consider the nature and scope of the orders to be entered consistent with this opinion. As soon as the District Judge takes hold of the case, our stay will automatically expire."

---

\* Senior Circuit Judge of the D. C. Circuit, sitting by designation.

\*\* Of the Third Circuit, sitting by designation.

When the motion for preliminary injunction in the present case came on before the district court, the district judge delayed handing down his decision because of the pendency of the appeal in the earlier case. After this Court's decision was handed down on August 29, 1964, Judge Simpson entered injunctions in both cases. On October 30, 1964, the trial court restrained the FEC from continuing in effect or implementing in any respect the changes in rates of pay, rules, or working conditions announced in the § 6 notices of September 24, 1963 and July 31, 1963, from implementing or continuing in effect the "conditions of employment" of September 1, 1963 and from

"making any other changes in rates of pay, rules or working conditions of its employees in crafts or classes covered by existing collective bargaining agreements except in accordance with the procedures of the Railway Labor Act or except upon specific authorization of this Court after a finding of reasonable necessity therefor upon application of the FEC to this Court during the pendency of the current strike."

On November 12, the FEC filed in the trial court an application for the approval of certain employment practices which it contended were "reasonably necessary" to enable it to continue to operate during the strike. The court granted a stay of its earlier order insofar as it required the FEC to adhere to its agreements with respect to the requested applications pending a hearing on the application for approval of the specific employment practices.

The employment practices departing from the existing collective bargaining agreements which FEC sought permission to put into effect were as follows:

(1) The use of existing personnel to do work across craft lines and seniority districts;

(2) The use of supervisors to perform craft work in the absence of sufficient qualified personnel;

(3) The exceeding of apprentice and/or trainee ratios or maximum age limitations contained in existing agreements;

(4) The use of non-exempt foremen to perform scope work in the absence of sufficient qualified personnel;

(5) The contracting out of work which FEC did not have personnel available to perform itself;

(6) The performance of the work of bridge tender by supervisory or contract employees;

(7) The furnishing of seniority rosters to labor organizations only if a protective order issued from the court making misuse of the information contained therein punishable as a contempt of court; and

(8) The treating of union shop agreements as void and unenforceable as to replacement workers and returnees until the labor organizations demonstrated their intention to make membership therein available to new employees without discrimination, after which the new employees should have thirty days in which to apply for membership.

Following the hearing on the merits of these several applications, the trial court, in an order entered on December 3, 1964, denied Numbers 1, 4, 7 and 8 but granted Number 3; denied Number 2 except for several positions for a limited time; denied Number 5 except that FEC was permitted to continue to contract out that work which was presently being contracted out; and denied Number 6 except that FEC was permitted to use contract or supervisory employees as bridge tenders for a restricted period (later extended by supplementary order).

The Railway filed its notice of appeal from the order dated October 30 and the order dated December 3, denying approval of departures from the existing contracts in the respects requested. The United States filed a cross-appeal from both injunctive orders.

A threshold question is raised by a motion by the Railway to dismiss the appeal

of the United States on the grounds that the United States has no standing to litigate this case and, as an appellant, it is not a party aggrieved by the decision of the lower court. This motion to dismiss was supported by memoranda but this court, by order dated March 12, 1965, directed that the motion be carried with the case to be heard and considered at the time of the hearing of the case on the merits.

We dispose first of the contention that the United States has no standing in the litigation. The contention of the Railway is that since there is here no actual "interruption to interstate commerce" the United States has no right under the Commerce Clause of the United States Constitution to maintain the suit. This distinguishes the case, the Railway says, from Re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092, in which it was held by the Supreme Court that a strike then in existence against the railroad gave the United States standing to seek an injunction to prevent a substantial part of commerce from coming to an actual stop. The Railway further contends that the United States has no inherent power to litigate for the purpose of "protecting the jurisdiction" of the National Mediation Board, which jurisdiction is said to be endangered by FEC's alleged violations of Railway Labor Act. The standing of the United States as an appellant here is further contested by the Railway on the theory that it was not an aggrieved party as a result of the decision of the court below.

The United States contends that its right to file the original action is threefold. It says (1) It has a right of action based upon the Commerce Clause of the Constitution to enjoin conduct which obstructs interstate commerce, under the Debs case; (2) it has a right of action to enforce the provisions of the Railway Labor Act, and (3) it has standing to sue in order to protect the jurisdiction of the National Mediation Board, and to aid that agency in the carrying out of its statutory functions. We think we need go no further than to hold, as we do,

that the allegations of the complaint touching on the threat of obstructing interstate commerce is sufficient to bring the case within the ambit of the court's decision in Re Debs, supra. See also United States v. City of Jackson, Mississippi, 5th Cir. 318 F.2d 1. Not only the allegations, but the proof adduced on the hearing for preliminary injunction, establish at least preliminarily that the actions of FEC, which we have, by our earlier decision, found to violate the Railway Labor Act, are a substantial threat to the free flow of interstate commerce. Moreover, as called to our attention by the United States, the Act itself in 45 U.S.C.A. § 152 Tenth seems to authorize this type of proceeding by the United States. This provision is as follows:

"The willful failure or refusal of any carrier, its officers or agents, to comply with the terms of the third, fourth, fifth, seventh, or eighth paragraph of this section shall be a misdemeanor, * * *. It shall be the duty of any United States attorney to whom any duly designated representative of a carrier's employees may apply to institute in the proper court and to prosecute under the direction of the Attorney General of the United States, all necessary proceedings for the enforcement of the provisions of this section, and for the punishment of all violations thereof * * *."

Finding, as we do, that the United States had standing to bring the action, it follows necessarily that, having not completely prevailed in the trial court in seeking to prevent all modifications of the existing employment contracts, the United States may be considered as an aggrieved party for the purpose of filing its cross-appeal.

On the merits of the appeal both the Railway and the Government reargue much of what has already been decided by this Court in the BRT case, supra, and both formally in their briefs request a modification of the Court's decision in that case. The United States particularly while stating that the solution there was

probably as equitable a one as could be devised, if any deviations at all could be recognized on account of strike conditions, nevertheless contended that under the statute no deviations were permissible. As we stated in the BRT case, 336 F.2d at 181, "when the machinery of industrial peace fails, the policy in all national labor legislation is to let loose the full economic power of each. On the side of labor, it is the cherished right to strike. On management, the right to operate, or at least the right to try to operate." We then stated, "But this right of self-help is not a license for wholesale abrogation of the agreement. As the term implies, it is help which is reasonably needed to meet the impasse of a railroad desiring to run and unions unwilling to furnish workers." We concluded that the manner in which this impasse could be resolved was to permit the Railway "to institute and maintain such employment practices, etc. as are, and continue to be, reasonably necessary to effectuate its right to continue to run its railroad under the strike conditions." 336 F.2d at 182.

We are not disposed to modify the law of the case now that the trial court has undertaken to carry out the mandate in the BRT case. We shall undertake to determine whether, in the case before us, the court has adequately understood and given effect to our earlier decision.

■ The Railway makes a major attack on the procedural steps which the trial court imposed on it, that is, forbidding it to deviate in the slightest degree from the existing employment contract "except upon specific authorization of this Court after a finding of reasonable necessity therefor upon application of the FEC to this Court * * *." The Railway contended that it should be permitted to institute the deviations and leave it to the United States or the Brotherhoods to complain to the trial court and carry the burden of proving the deviation not to be "reasonably necessary" in the strike conditions.

We think that the prior decision of this Court was so worded as to permit the trial court to adopt the procedure which it followed in entering the injunction of October 30. We think it entirely appropriate that since a departure from the employment contracts is, as clearly stated by us in our prior opinion, the exception even during the strike it is appropriate for the burden of showing the necessity for such departure to be placed on the party claiming the privilege.

■ Coming finally to the specific departures permitted and forbidden by the trial court to the Railway, we note that in our earlier opinion we made the following comment: "While this appears to move the Judge from the firing line, Townsend v. Sain, 1963, 372 U.S. 293, 319, 83 S.Ct. 745, 9 L.Ed.2d 770, into the locomotive cab, it is not for him to decide what to pay, etc. His task is to pass on what FEC has done or proposes to do." We think it even less appropriate for this Court itself to attempt to take the engineer's place in a locomotive cab. We know full well that the distinguished trial Judge has had a long familiarity with the Florida East Coast Railroad and its operations, and more particularly in recent years he has had much experience with its labor problems. We think that his findings and determinations with respect to the departures from the employment contract reasonably necessary under strike conditions are as much entitled to be undisturbed except upon a finding that they are clearly erroneous as are other findings of fact by a trial court sitting without a jury. We find none of his determinations in this respect to be without a substantial basis on the record as a whole to support them. We therefore decline to interfere either with these findings or with the normal discretionary power of the trial court in the granting of interlocutory orders in such a case as this.

On the appeal by the Florida East Coast Railroad Company, the judgment is affirmed. On the cross-appeal of the United States, the judgment is affirmed.