362 F.2d 482
 FLORIDA EAST COAST RAILWAY COMPANY, Appellant,
v.
BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Appellee.
FLORIDA EAST COAST RAILWAY COMPANY, Appellant,
v.
ORDER OF RAILROAD CONDUCTORS & BRAKEMEN, and Brotherhood of
Locomotive Firemen and Enginemen, Appellees.
 Nos. 22062, 22221.
 United States Court of Appeals Fifth Circuit.
 June 14, 1966.
 
 J. Turner Butler, Jacksonville, Fla., Wm. B. Devaney, Washington, D.C., for appellant, Steptoe & Johnson, Washington, D.C., of counsel.
 Allan Milledge, Neal Rutledge, Rutledge & Milledge, Miami, Fla, for appellees.
 Before JONES and BELL, Circuit Judges, and JOHNSON, District Judge.
 GRIFFIN B. BELL, Circuit Judge:
 
 
 1
 These cases, consolidated for appeal, represent another milepost in the long struggle between the Florida East Coast Railway Company (FEC) and its employees over working conditions. FEC seeks reversal of an order of the District Court in each case maintaining the status quo with respect to rates of pay, rules and working conditions pending compliance by the carrier with 6 of the Railway Labor Act 45 U.S.C.A. 156. It is conceded that the question presented involves major dispute within the meaning of the Railway Labor Act, 2, Seventh, 45 U.S.C.A. 152, Severth, and thus compliance with 6 is mandatory.[1] Thus it follows that the District Court had jurisdiction to maintain the status quo by injunction pending compliance with 6. Florida East Coast Railway Company v. Brotherhood of Railroad Trainmen, AFL-CIO, 5 Cir., 1964, 336 F.2d 172, cert. den., 379 U.S. 990, 85 S.Ct. 703, 13 L.Ed.2d 611. Much of the background for the instant litigation will be found in this latter case. No. 22,221 is reported. Order of Railroad Conductors & Brakemen v. Florida East Coast Railway Co., M.D.Fla., 1965, 252 F.Supp. 586. No. 22,062 is unreported.
 
 
 2
 The question is whether FEC was entitled to invoke the changes set out in a notice dated November 2, 1959, or whether it abandoned those changes by a notice of proposed contract revision dated September 25, 1963. FEC had complied with 6 with respect to the 1959 notice but not as to the 1963 notice. If the 1959 notice was abandoned, or if FEC is estopped to assert it, then the pre-1959 contract conditions are applicable pending compliance with 6 on the 1963 notice of revision and the District Court was correct.
 
 
 3
 The operating employees of FEC are represented by the Brotherhood of Railroad Trainmen (BRT), the Brotherhood of Locomotive Engineers (BLE), the Brotherhood of Locomotive Firemen & Enginemen (BLR&E), and the Order of Railroad Conductors and Brakemen (ORC). FEC joined with many other class one carriers in issuing the November 2, 1959 notice pursuant to 6 of the Act. This notice related to the consistency of crews, and also to the assignment procedures and pay rates of employees. The Southeastern Carriers Conference Committee represented FEC in the proceedings under the Act until March 12, 1963 when FEC determined to go it alone. Meanwhile the non-operating crafts on the FEC commenced a strike on January 23, 1963 and the operating employees honored their picket lines. The FEC continued to operate. The Supreme Court held in Brotherhood of Locomotive Engineers v. B. & O. RR, 1963, 372 U.S. 284, 83 S.Ct. 691, 9 L.Ed.2d 759, that all of the statutory procedures under the Act had been exhausted by the carriers and that the changes contemplated in the November 2, 1959 notices could be put into effect subject only to the invocation of a 10 emergency board. On April 2, the Mediation Board recommended the appointment of an emergency board under 10. 45 U.S.C.A. 160. In the meantime, FEC having threatened to place the November 1959 conditions in effect prior to the report of the emergency board, an injunction was issued at the instance of the United States to block this course of conduct. United States v. Florida East Coast Railway Co., D.D.C., 1963, 221 F.Supp. 325.
 
 
 4
 The emergency board reported and FEC became free to put the proposed November 2, 1959 changes into effect. This was done on July 8, 1963 by notifying the four operating organizations that they would become effective on July 10, 1963. However, on August 28, 1963, Congress passed Public Law 88-108, 77 Stat. 132, prohibiting all involved carriers from making the November 2, 1959 changes until certain matters had been arbitrated, and FEC complied pending expiration of the law by its own terms on February 24, 1964. The September 25, 1963 notice was given to the four operating organizations, i.e., the three appellees here and the BRT. In the Trainmen (BRT) case, supra, 336 F.2d 172, we held that the November 2, 1959 notice and September 25, 1963 notice were independent of each other and that they were so treated by the parties. The 1963 notice by its terms '* * * superseded all other rules, agreements and understandings in conflict therewith * * *'. The proposed revision which was appended to it was never invoked against the BRT. Instead, the procedures of 6 were followed and we concluded that the 1963 notice did not supersede the 1959 notice.
 
 
 5
 The question before us for decision depends on an additional fact not present in the BRT case. The 1963 revision was actually placed in effect as to the three organizations here, the BLE, BLF&E, and ORC. When the September 25, 1963 notice was given to the four organizations, a meeting pursuant to 6 was held with FEC. The three appellees here left the meeting because of the presence of a court reporter and invoked the services of the National Mediation Board. The matter was docketed by the Board. Notwithstanding this, FEC notified these three organizations on November 4, 1963 that, effective that date, it was putting the total revision appended to its notice of Septmeber 25, 1963 into effect as to the crafts represented by the three. The BRT was not so notified. It was the position of FEC that the Mediation Board had no jurisdiction because the three organizations refused to bargain. FEC from that day forward operated under the September 25, 1963 notice and revision as to these three organizations but not as to the BRT, and nothing more was said regarding the November 2, 1959 agreements.
 
 
 6
 It was greatly to the benefit of FEC to place the 1963 revision into effect rather than the 1959 changes. Nothing would be served by detailing the differences between the changes under the 1959 notice and the 1963 contract revision and the resultant advantage to the FEC. The parties understand the differences and advantages; they are not disputed. The fact is that they became effective against the employees in the three appellee organizations. However, at the time the September 25, 1963 notice was given, the statutory stay under Public Law 88-108 was effective. Because the September 25 revision was invoked on November 4, 1963 in the face of this law, the District Court enjoined the changes under the revision on December 11, 1963.
 
 
 7
 All remanined quiet until February 24, 1964 when Public Law 88-108 expired. FEC, still negotiating with the BRT concerning the proposed revision under the September 25, 1963 notice, advised the BRT that it was immediately placing its 1959 proposals into effect as to the BRT but that such action in no way changed or modified the 6 notice of September 25, 1963 '* * * with respect to which negotiations are still proceeding with your Organization.' On the other hand, FEC wrote an entirely different letter to the appellees. The letter to them sought to reinstate the 1959 proposals '* * * even though they have been superseded and replaced by the rules placed into effect on November 4, 1965 * * *' The letter continued: 'In other words, even though superseding rules are now in effect, the carrier is aware that you disputed the right of the carrier to place superseding rules into effect on November 4, 1963 and the Mediation Board has docketed your application for mediation in this matter as Case A-7056 * * *'FEC then attempted to improve its position with respect to these appellees by a letter dated March 9, 1964. That letter provided that the notice of September 25, 1963 was withdrawn and the changes embraced in the 6 notice of November 2, 1959 were made effective as of March 10, 1964. The District Court held that the November 1959 notice was superseded by the act of placing the revision under the September 25, 1963 notice into effect. Our BRT case, supra, 336 F.2d 172, was distinguished on the ground that the 1963 revision was never placed into effect against the BRT.
 
 
 8
 No. 22,062, the BLE case, came to this court on an application for a stay of the injunction entered in the District Court. Florida East Coast Railway Co. v. Brotherhood of Locomotive Engineers, 5 Cir., 1965, 341 F.2d 99. FEC asserted the BRT case, supra, 336 F.2d 172, as authority for the proposition that the September 25, 1963 notice did not supersede the November 2, 1959 notice. This court was of the opinion that there was substantial basis for the determination by the District Court that the November 2, 1959 notice was superseded and could not be revived as a basis for the changes therein proposed. The court referred to the differences which we have discussed between the procedures followed with respect to the BRT, and the procedures followed with respect to the three appellee organizations in the case now under consideration. The stay was denied.
 
 
 9
 Agreeing with the District Court and the action of this court on the motion for stay, we affirm. The November 2, 1959 notice was superseded by the action taken pursuant to the September 25, 1963 notice on November 4, 1963. The contract revision under the September 25, 1963 notice was imposed against the employees represented by the organizations here from November 4, 1963 to December 11, 1963. The employees were relieved of the revision only by the action of the District Court in enjoining the FEC because the revision was in violation of Public Law 88-108. Whether this conduct of FEC be termed a waiver of its rights under the November 2, 1959 notice or an equitable estoppel, in either event we think FEC is bound. The contract proposed in the notice of September 25, 1963 included many changes over and above what FEC proposed in the November 2, 1959 notice. Its stated intention with respect to the BRT was the same but 6 of the Railway Labor Act was followed as to the BRT. It would be inequitable and wholly lacking in conscience to now allow FEC to fall back on the 1959 notice after having taken advantage of the 1963 notice and revision thereunder. FEC had the advantage of the revision while those represented by the appellees suffered the detriment of it. This was a sufficient basis for the decision of the District Court.
 
 
 10
 This means that FEC must follow the requirements of 6 of the Railway Labor Act. It is bound by the pre-November 2, 1959 agreements with appellees until that has been done. These agreements are, of course, subject to such changes as may have been permitted by the District Court under the strike conditions existing on the FEC. These changes were the subject matter of our opinions in the BRT case, supra, 336 F.2d 172; and Florida East Coast Railway Co. v. United States, 5 Cir., 1965, 348 F.2d 682, affirmed by the Supreme Court, May 23, 1966, 86 S.Ct. 1420.
 
 
 11
 Only one question remains for disposition. The FEC contends that the BLE and ORC were not entitled to invoke the injunctive power of the court in view of the fact that they were on strike when the injunctive relief was sought and they thus came to court with unclean hands. These unions went on strike after receiving the February 24, 1964 notice from FEC that the 1959 changes were being invoked. Their position was that FEC was too late. This turns out to be correct. The action of the unions in striking, was not in derogation of the processes of the Railway Labor Act. It was in support of the Act. The unions were not striking to change rules, pay rates, or working conditions; they were striking because the carrier had violated the Act by making such changes without following the statutory procedure required in the Act. They did not have unclean hands under these Circumstances and thus this contention is also without merit.
 
 
 12
 Affirmed.
 
 
 
 [1]
 See Elgin, Joliet and Eastern R. Co. v. Burley, 1945, 325 U.S. 711, 722-724, 65 S.Ct. 1282, 89 L.Ed. 1886; Brotherhood of Locomotive Firemen and Enginemen v. Florida East Coast Railway Co., 5 Cir., 1965, 346 F.2d 673, on what constitutes a major dispute