ALTON & SOUTHERN RAILWAY
COMPANY et al., Plaintiffs,

v.

BROTHERHOOD OF RAILWAY, AIR-
LINE AND STEAMSHIP CLERKS,
FREIGHT HANDLERS, EXPRESS
AND STATION EMPLOYEES, Defend-
ant.

UNITED STATES of America, Plaintiff,

v.

BROTHERHOOD OF RAILWAY, AIR-
LINE AND STEAMSHIP CLERKS,
FREIGHT HANDLERS, EXPRESS
AND STATION EMPLOYEES et al.,
Defendants.

Civ. A. Nos. 78–1829, 78–1838.

United States District Court,
District of Columbia.

Sept. 29, 1978.

As Amended Jan. 21, 1980.

Richard T. Conway, Washington, D. C.,
for Alton & Southern Ry. Co.

Glenn V. Whitaker, Brian G. Kennedy,
Dept. of Justice, Washington, D. C., for the
U. S.

John O'B. Clark, Jr., Washington, D. C.,
for defendant.

TEMPORARY RESTRAINING ORDER

AUBREY E. ROBINSON, Jr., District
Judge.

This action is before the Court on Plain-
tiffs' * Motions for a Temporary Restrain-
ing Order and upon Defendant's Cross-Mo-
tion for a Temporary Restraining Order.
This Court has considered the written and
oral arguments of counsel, and the entire
record herein, and concludes that both
Plaintiffs' and Defendant's Motions for
Temporary Restraining Orders must be
granted.

Defendant is currently engaged in a labor
dispute with Plaintiff Norfolk & Western
Railway Company ("N&W"),[1] involving pro-
posed changes in the scope of the parties'
bargaining agreement under the Railway
Labor Act, 45 U.S.C. §§ 151, et seq.
("RLA"). On July 10, 1978, Defendant
BRAC began to engage in a work stoppage
against N&W, and that work stoppage has
since spread to other Plaintiff railroads.

Pursuant to 45 U.S.C. § 160, the National
Mediation Board determined that the afore-
mentioned dispute "threatens substantially
to interrupt interstate commerce to a de-
gree such as to deprive a section of the
country of essential transportation serv-

---

* Civil Action 78–1838 has been consolidated
  with Civil Action 78–1829.

1. Norfolk & Western Railway Company, not an
   original Plaintiff in this action, has been joined
   as a party-plaintiff by Order of the Court, pur-
   suant to F.R.Civ.P. 19(a).

ices," and reported its findings to the President.[2] Thereupon, the President created an Emergency Board to investigate and report respecting the dispute.

45 U.S.C. § 160 provides in part:

After the creation of such board and for thirty days after such board has made its report to the President, no change, except by agreement, shall be made by the parties to the controversy in the conditions out of which the dispute arose.

The issue involved in both Plaintiffs' and Defendant's Motions concerns the construction which should be given to this provision. Plaintiff carriers contend that the "conditions out of which the dispute arose" include the fact that no work stoppage had occurred at the time the N&W—BRAC dispute arose.

Plaintiffs' contention is correct. *Detroit & Toledo Shore Line R.R. Co. v. United Transportation Union*, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969), indicates that the "conditions" for which the status quo is to be maintained are to be "broadly conceived." The Court states: "The obligation of both parties . . . is to preserve and maintain unchanged those actual, objective working conditions and practices, broadly conceived, which were in effect prior to the time the pending dispute arose . . . Therefore strikes are prohibited during the period of inquiry by the Emergency Board and for thirty (30) days thereafter."[3]

As the *Shore Line* case clearly indicates, *all parties* involved in the dispute are obligated to maintain the status quo. Plaintiff carriers cannot, and shall not, be permitted to have it both ways—this Court cannot enjoin Defendant BRAC from continuing its work stoppage while permitting Plaintiffs to unilaterally vary the conditions surrounding the relationship between the parties as they existed at the time the dispute arose.

Congress' purpose in requiring all parties to maintain the status quo during the pendency of the Board's inquiry and for thirty (30) days thereafter was to provide for a "cooling-off" period. *Shore Line, supra*, 396 U.S. at 152, 90 S.Ct. 294. That purpose would be frustrated if Plaintiff carriers were permitted unilaterally to vary the working conditions and practices in effect prior to the time that the pending dispute arose.

Finally, this Court has determined that if Defendant is not restrained, Plaintiffs and the public shall be irreparably injured; if Plaintiff carriers are not restrained, the Defendant and the public shall be irreparably harmed.

For these reasons, it is by the Court this 29th day of September, 1978,

ORDERED, that during the pendency of this action or until further order of the Court,

(1) That the Defendant, its officers, employees, agents, members and all persons acting in concert or participation with any of them, are hereby enjoined and restrained from resorting to self-help including strikes or lockouts during the period in which the status quo provision of Section 10 of the Railway Labor Act is in effect;

(2) That the Plaintiff carriers and their subsidiaries, their officers, employees, agents and all persons acting in concert

**2.** See Executive Order of the President Creating Emergency Board No. 188, September 28, 1978, attached as Plaintiffs' Exhibit "A".

**3.** S.Rep.No.606, 69th Cong., 1st Sess. 5 (1926) states:

The objection that the bill should in express terms forbid strikes during the period of the inquiry by the emergency board and for 30 days thereafter is successfully met, in the opinion of the committee, by the contention that in forbidding a change in the conditions out of which a dispute arose, one of which and a very fundamental one is the relationship of the parties, it already forbids any interruption of commerce during the period referred to; and if strikes were in express terms forbidden for a given period there might be an implication that after that period strikes to interfere with the passage of the United States mails and with continuous transportation service might be made legal. In the opinion of the committee, this possible implication should be avoided.

See also *United States v. Florida East Coast Ry. Co.*, 221 F.Supp. 325 (D.D.C.1963).

**132**

with them, are hereby enjoined and restrained during the period in which the status quo provision of Section 10 of the Railway Labor Act is in effect, from changing, not preserving or not maintaining, those actual, objective working conditions and practices, broadly conceived, which were in effect on or before July 9, 1978.

(3) That Plaintiff carriers shall not engage during the period in which the status quo provision of Section 10 of the Railway Labor Act is in effect, in any action or actions of reprisal against any person who was an employee of Plaintiff carriers (BRAC members and all persons acting in concert or participation with them) on July 9, 1978, or thereafter, because of events which occurred between July 10, 1978, and September 29, 1978, inclusive, and shall recall within 10 days any employees furloughed between those dates; provided, however, that nothing in this Order shall thereafter prevent Plaintiff carriers from furloughing employees in conformity with the collective bargaining agreements and conditions of employment in effect prior to July 10, 1978.

(4) That Plaintiff carriers shall not, during the period in which the status quo provision of Section 10 of the Railway Labor Act is in effect, abolish or continue to abolish any positions which existed on July 9, 1978.

It is Ordered that a hearing shall be held before this Court at 9:30 o'clock a. m. on October 10, 1978, upon the Plaintiffs' and Defendant's Motions for Preliminary Injunction; and it is

FURTHER ORDERED, that this Temporary Restraining Order shall expire at 6:45 o'clock p. m. on October 10, 1978, unless it is further extended by Order of this Court; and it is

FURTHER ORDERED, that this Temporary Restraining Order may be served by any person over the age of eighteen (18) years selected for the purpose by the parties; and it is

FURTHER ORDERED, that this Temporary Restraining Order is issued upon the condition that an undertaking in the sum of $10,000.00, or cash in that amount, be filed by Plaintiff carriers, and in the sum of $10,000.00, or cash in that amount, be filed by Defendant BRAC, to make good such damages as may be suffered or sustained by any party who is found to be wrongfully enjoined, pursuant to F.R.Civ.P. 65(c).