LOUIS L. LAWSON v. STATE OF INDIANA

[No. 1070S251.  Filed December 21, 1971.]

540

*Charles W. Vincent,* of Terre Haute, for appellant.

*Theodore L. Sendak,* Attorney General, *J. Frank Hanley,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction in a trial without jury in the Vigo Circuit Court for theft of lost property in violation of I.C. 1971, 35-17-55, being Burns § 10-3032, which reads:

> "A person who obtains control over lost or mislaid property commits theft when he:
>
> "(1)   knows or learns the identity of the owner or knows or learns of a reasonable method of identifying the owner, and
>
> "(2)   fails to take reasonable measures to restore the property to the owner, and
>
> "(3)   intends to deprive the owner permanently of the use or benefit of the property.
>
> "Reasonable measure shall include, but not necessarily be limited to, notifying the identified owner or any peace officer."

Appellant contends there was insufficient evidence to sustain a finding that he had the knowledge and intent required

by this statute. In reviewing the allegation of insufficient evidence this Court will not weigh the evidence nor resolve questions of credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the finding of the trial court. *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558.

Earnest Wild testified that he had purchased seven rolls of wrapped pennies worth $3.50 from his niece sometime prior to October 31, 1969. The girl had written her name, address, and phone number on the paper wrappers containing the pennies. Mr. Wild kept the seven rolls of pennies in a desk drawer at his place of business and on October 31, 1969, they were removed by persons unknown to Mr. Wild. Mr. Wild testified that a small amount of loose change was also lost from the desk drawer.

On November 16, 1969, at 10:00 a.m. Trooper Hanlon of the Indiana State Police and Sheriff Albright of Putnam County arrested appellant on a warrant for non-support at his parents' home, Rural Route #2, Brazil, Indiana, where appellant was then living. With appellant's consent they searched his car and found a white cloth bag under the front seat which contained the seven rolls of wrapped pennies lost by Mr. Wild, plus sixty-three loose pennies and seven loose nickels. Appellant told the officers that he found the coins beneath a tree in Vigo County. In a subsequent conversation appellant said he bought them at his place of employment from some fellow. Trooper Hanlon testified that appellant was permitted to make a phone call from the house where he was arrested. Hanlon did not say he saw appellant use the phone.

Officers Webster and Mills of the Terre Haute Police Department went to interview appellant in the Putnam County

jail and his statement to them was identical with his trial testimony.

Appellant testified that on Friday, November 7, or Saturday, November 8, 1969, he had been out drinking since 8:30 p.m. and around 1:30 a.m. he pulled into the parking lot of the Flaming Hearth Tavern in Terre Haute, Indiana. As he parked he noticed a white cloth bag next to a pole holding up the tavern sign. Appellant testified that he:

> "picked up the bag which was a white cloth bag. I reached into the bag and I found, what to me was pennies in rolls. At the time I was saving pennies and small change for my children in Greencastle. I dumped my pennies out of a brown paper bag in the car into the white cloth bag and put them in the car where they were found by the Police Officers.
>
> Q. How did you determine them to be pennies? . . . these rolls, to be rolls of pennies, Mr. Lawson?
>
> A. Well, I have handled a few rolls of pennies and I did work at a gas station in Greencastle . . . a number of gas stations . . . and I was a temporary manager at the Deep Rock service station in Greencastle and we handled quite a bit of change there.
>
> Q. And there is a different feel in a roll of pennies from nickels, dimes and quarters?
>
> A. I would say so. When I took them out of the bag I didn't take them all out. When I took them out I think there were three or four rolls . . . I looked . . . I said 'pennies' and put them back."

There were no other coins in the white sack. Appellant testified that between the time he found the pennies and the time of his arrest on November 16th, he checked to see if the white bag was still in the car but he did not examine the rolls any further. Appellant had been working for a week or two prior to his arrest at Weston Paper Company. Appellant said he did not know the rolls of pennies had a name written on them until after he was arrested on November 16, 1968.

Appellant's father testified that appellant was living with him and appellant's mother on Rural Route #2, Brazil, Indiana.

The witness testified that there was not then nor ever had been a phone in that house.

We hold the above evidence was insufficient to show that appellant had knowledge of a reasonable method of identifying the owner of the seven rolls of pennies. Appellee points to appellant's own testimony that he looked at three or four of the rolls of pennies when he found them and argues it may be inferred that appellant saw the handwriting on the rolls and therefore that he knew of a reasonable method of identifying the owner. We do not agree. The only evidence on the point showed that appellant found the rolls at 1:30 a.m. after several hours of drinking. There was no evidence that the writing on the rolls was such that it necessarily would have been noticed by anyone casually looking at the rolls. In fact the evidence shows the opposite may have been true, as shown by the cross examination of Officer Mills:

"Q. Mr. Mills, I'll hand you the roll of pennies . . . those rolls of pennies. Each roll is plainly marked, is it not?
A. Yes sir, it is.
Q. I believe the names and telephone numbers are written there in ink, are they not?
A. Yes.
Q. And still it took you a little time in the Courtroom to check and see that they were all so plainly marked, didn't it?
A. I don't think too great of a time.
Q. Not too great of a time?
A. No.
Q. Do you think that you would have been able to accomplish this inspection at night in an automobile with the same rapidity and speed or would it be more difficult?
A. It would be more difficult at night."

Neither does appellant's behavior after finding the coins support an inference that appellant knew a name and address were on the rolls. Appellant did not remove the wrappers or spend

the coins but merely put the rolls in the bag under his front seat. When he was arrested for non-support he freely allowed the police to search his car and look in the white bag. If appellant had known of the writing on the rolls it is improbable he would have treated them so casually.

Neither was there any evidence introduced by appellee to show that appellant had the intent to permanently deprive the owner of the use of the coins. Appellee argues that appellant put them in the same sack with coins he admittedly was saving for his children and that it is reasonable to infer he intended to do the same with the found coins. However, appellant did not commingle the found coins with his own, but rather kept them in their wrappers. The fact that appellant treated the coins casually is easily explained by the fact that there was only $3.50 involved and that appellant did not know of a reasonable method of learning the identity of the owner.

JJ. Hunter and Givan are of the opinion that this judgment should be reversed and the cause remanded for a new trial. The majority of the Court, C. J. Arterburn, Prentice and DeBruler, JJ., are of the opinion that this judgment should be reversed and the cause remanded with instructions to the trial court to order the defendant discharged.

It is the order of the Court that the judgment is reversed and the cause remanded to the trial court with instruction to discharge the defendant.

NOTE.—Reported in 276 N. E. 2d 514.