William E. MOSER, Jr., Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee.

No. 4–781A46.

Court of Appeals of Indiana,
Second District.

March 30, 1982.

Lewis N. Mullin, Delphi, for appellant.

Linley E. Pearson, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

William Moser was charged with and convicted of criminal conversion, a class A misdemeanor, in that he obtained cable television without paying for the same and without the consent of Total Cable Television. I.C. 35–43–4–3 (Burns Code Ed.Repl.1979).[1]

The facts establish that on November 21, 1980, David Salyers, an employee of Total Cable Television, went to 221 West Front Street in Delphi to install a cable television line into the upstairs front apartment. He went back to the alley to hook up a wire and noticed two pieces of electrical wire hooked into a main drop which went to one of the other apartments. The two pieces of electrical wiring were tied into a distribution line and taped. The electrical wiring

---

1. Defendant was not charged pursuant to I.C. 35–43–5–3 (Burns Code Ed.Repl.1979) which defines the class A misdemeanor of deception as follows:

"(a) A person who:

. . . .

(6) With intent to defraud another person furnishing ... cable TV service ... avoids a lawful charge for that service by scheme or device or by tampering with facilities or equipment of the person furnishing the service; ..."

was of a type which the cable company did not use, and Mr. Salyers observed that wiring led through a window into an upstairs apartment. Because this wiring was irregular, Mr. Salyers called his employer and requested the company to check the records regarding the upstairs rear apartment. A check of the records revealed that there was not a paying customer for that apartment.

Mr. Salyers notified the Delphi City Police and requested that photos be taken of the irregular hookup. Police Officer Yeager was summoned and took pictures under authority of the prosecutor's office. Officer Yeager stated that he knew through previous experience that William Moser lived at the apartment in question.

During the trial Moser represented himself and testified that he moved to the apartment about three years prior. He stated that a man who lived downstairs at that time told him that television had been hooked up to cable when he had lived in Moser's apartment. Moser explained that the only thing he did was hook an aerial wire already in the room to the back of his television. From the appearance of the line, he knew that it had been irregularly spliced and was in all likelihood illegal. His testimony indicated that he had never been billed for cable television service and was conflicting with respect to whether he thought the service was included in his rental payment.

Moser asserts that:

I. The evidence was insufficient to establish that he knowingly acted; and

II. The evidence was insufficient to establish that television cable service was delivered to or taken by him.

We affirm.

**2.** Our research, however, discloses no authority which requires that the defendant, at the time of the offense, have knowledge of the identity of the owner or rightful possessor of the property. *See Griffiths v. State* (1904) 163 Ind. 555, 72 N.E. 563 (larceny conviction upheld when evidence provided reasonable inference of rightful possession although there was no evidence that defendant knew the identity of that rightful possessor).

### I.

The statute creating and defining the offense requires the knowing or intentional exertion of unauthorized control over the property of another person. The definitional statute concerning culpability, I.C. 35–41–2–2 (Burns Code Ed.Repl.1979) provides that:

> "(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."

It is Moser's position that he lacked the requisite mens rea in that there was reasonable mistake about who was providing the cable service, and accordingly that such "mistake of fact" negates culpability. We need not decide whether one charged with criminal conversion must be proved to have known the specific identity of the owner or person having paramount possessory or proprietary interest because Moser has failed to cite us to any authority in support of his argument. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).[2]

Be that as it may, Moser testified that he hooked the wire to his television set, used the signal, knew it was cable television, and that it was probably illegal. Under the conversion statute it need not be proved that Moser intended to deprive another person of the value of the service. Absence of the element of "intent to deprive" distinguishes criminal conversion from theft. *See Commentary*, West's Ind.Ann.Code 35–43–4–3. The Comments of the Indiana Criminal Code Study Commission carry a possible implication that criminal conversion as statutorily defined and as affected by the statutory definition of "knowingly"

*Compare Lawson v. State* (1971) 257 Ind. 539, 276 N.E.2d 514 (theft of lost property in violation of since repealed I.C. 35–17–5–5). The crime considered in *Lawson* did not occur unless the defendant knew the identity of the owner at the time of the act or thereafter learned of that identity or had a reasonable method of doing so. Thus knowledge of identity at the time of the act was not required. *See* Note, Legislative Revision of Property Crimes in Indiana, 39 Ind.L.J. 827 at 845.

does not require mens rea. With reference to theft, the Commission observed that the alternative mens rea requirements of the former law were replaced by the phrase "with intent to deprive." The Commission did not specifically attach any mens rea significance to the "unauthorized control" element of the crime. The implication is arguably correct only if I.C. 35–41–2–2 defining "knowingly" does so solely in terms of awareness by the actor that there is a high probability that he is so acting and without regard to any mental element. The solution lies in whether the word "conduct" as contained in I.C. 35–41–2–2 means only the physical act engaged in by the actor or whether it includes the mental state normally referred to as mens rea. We conclude that the law necessarily contemplates and requires the conjunction of a physical act *and* an awareness of the high probability that the physical act is unauthorized.

The Commission itself dispelled the implication that knowledge of the act alone is culpable by opining that a defendant "must know or have a firm belief that the control he is exerting is unauthorized." Ind. Criminal Code Study Commission Comments to I.C. 35–43–4–2.

■ That I.C. 35–41–2–2 establishes varying degrees of culpability is demonstrated by the use of "conscious objective to do so" with reference to intentional conduct as opposed to awareness "of a high probability that he is doing so" with respect to knowing conduct. We conclude that the Commission's Comment is correct in that the requisite knowledge must relate not only to the act resulting in control but as well to the lack of authorization for that control. To hold otherwise is to place a ludicrous construction upon the phrase "high probability." It is inappropriate to speak of awareness of knowledge of one's own physical acts in terms of probabilities. One is either aware of his own physical acts or he is not. The term "high probability" can have significance only with regard to some element of conduct which is subject to doubt. That element must necessarily be the cognitive element, i.e., mens rea. Accordingly, we hold that the control of the property must be exercised with an awareness of the high probability that such control is unauthorized. The facts recited here are sufficient to show that the defendant acted knowingly in the exercise of unauthorized control of the television service.

## II.

■ In his somewhat related argument, Moser contends that the property referred to in the charge was not the cable or the wire of the company which he attached to his television set, but rather was the service of the company. In his reply brief he asserts that the State's brief attempts to change the property converted from "service" to "signal." There can be no mistake that the service referred to in the charge is that which enabled Moser to receive the signal and therefore the desired television programming. If Moser had not attached the cable or wire to his set, he would not have received the programming. Though not cited by the parties, we deem it appropriate to note that *Indiana Department of State Revenue, Sales Tax Division v. Cable Brazil, Inc.* (2d Dist. 1978) Ind.App., 380 N.E.2d 555, is not relevant to our present determination. That case involved the now repealed tax exemption statute, in particular I.C. 6–2–1–39(b)(6) (Burns Code Ed. 1976). It held that cable television signals were not "tangible personal property" within the meaning of the exemption statute. In dictum, referring to the fact that words in statutes are typically given their ordinary meaning, the Court stated: "In common usage, a 'service' is not property—tangible or otherwise. Rather, it is an act—property exists while a service is rendered or performed." 380 N.E.2d 555, 561. This statement was given in the context of construing the exemption statute and I.C. 6–2–1–38(n) (Burns Code Ed.1976), both of which involve taxation. Property in the criminal sense is not the same. Accordingly, in the criminal code it is defined as follows:

" 'Property' means anything of value; and includes . . . personal property, money, labor, and services; . . .

Property is that 'of another person' if the other person has a possessory or proprietary interest in it, even if an accused person also has an interest in that property." I.C. 35–41–1–2 (Burns Code Ed. Repl.1979).

Moser does not contest that he was receiving something of value, whether a service or signal or a combination thereof, from someone who had a possessory or proprietary interest in it. It was therefore not erroneous for the trial court to determine that the property was delivered to or taken by Moser.

Judgment affirmed.

BUCHANAN, C. J., and SHIELDS, J., concur.