PORTER COUNTY CABLE
COMPANY, INC., Plaintiff,

v.

Charles MOYER, and Charles Moyer,
d/b/a F.A. Distributors, Defendants.

No. S 82–172.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 13, 1983.

F. Joseph Jaskowiak, Valparaiso, Ind., for plaintiff.

Alban L. Smith, Michigan City, Ind., William L. Hoehner, Valparaiso, Ind., Charles G. Nightingale, Portage, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is before the Court on plaintiff's Motion for Summary Judgment filed December 9, 1982. No response has been filed within the time limits fixed by Rule 7 of the local rules of this Court. The allegations of plaintiff's Motion for Summary Judgment stand before this Court without dispute and disclose that plaintiff is entitled to judgment as a matter of law.

### I.

On April 21, 1982 plaintiff, Porter County Cable Company, Inc., filed its complaint against defendants, Charles Moyer and Charles Moyer d/b/a F.A. Distributors. On that same day, plaintiff filed a Motion for Temporary Restraining Order and for a Preliminary Injunction and a Memorandum in Support of Application for Temporary Restraining Order. Along with that Motion and Memorandum, plaintiff also filed two affidavits, one by Ronald Ellis and one by Debora Butterfield. Neither Mr. Ellis nor Ms. Butterfield are currently employed by plaintiff. All depositions filed are ordered published. On May 5, 1982, plaintiff's motion was continued indefinitely, as a result of a tentative agreement to settle the case. On June 28, 1982 the Court granted the withdrawal of defendants' counsel, Murphy, Burns and McInerney, P.C. Defendants are presently represented by Attorney Alban L. Smith. On July 14, 1982, the deposition of Charles T. Moyer was taken by plaintiff's counsel.

Porter County Cable Company, Inc., (hereinafter Porter Cable) provides cable television service only to those customers who pay subscription fees. [Ronald Ellis, Affidavit, filed on April 21, 1982, par. 2–5]. The programs offered by Porter Cable are not intended for use by the general public, but are intended only for the use of paying subscribers. [Ellis, Aff. par. 2–5]. The customers must pay an additional fee to view each of two premium channels— "Showtime" and "Cinemax". [Ellis, Aff., par. 5]. Defendants have made available to Porter Cable customers devices which allow the customers to decode "Showtime" and "Cinemax" transmissions so that they may be viewed without paying the additional fee. [Ellis, Aff., par. 11–13; Debora Butterfield, Affidavit, filed on April 21, 1982; Charles T. Moyer, Deposition, July 14, 1982, p. 8 1. 18–20 & p. 11 1. 5–8].

In his deposition, defendant, Charles T. Moyer, described an advertisement, which defendants had placed in a newspaper, and which stated in part: "This unit [a Jerrold System decoder] will pay for itself in approximately ten months." [Moyer, Depo., p. 50 1. 9–25, p. 51 1. 1 & p. 51 1. 7–24]. In explaining what this portion of the advertisement meant, defendant stated that it would pay for itself within ten months because a basic cable subscriber would not have to pay any additional fee to view any of the premium channels offered through plaintiff if the subscriber purchased a decoder from Moyer, through his business. [Moyer, Depo., p. 53 1. 10–15, p. 54 1. 19–25 & p. 55 1. 1–6]. Defendant, Charles T. Moyer, admitted that he, through his business, sold decoding devices to Porter Cable subscribers. [Moyer, Depo., p. 8 1. 18–20 & p. 11 1. 5–8. See Orlo H. Jackson Affidavit.]

In addition, defendant stated that he had previously "sold equipment that was illegal for the customer to use" and that he considered these sales of unauthorized decoder boxes to be "the same." [Moyer, Depo., p. 54 1. 9–18]. Moyer concluded his deposition by stating that although neither he nor F.A. Distributors were in the business of selling decoder devices at the time of the deposition, "they may be in the future". [Moyer, Depo., P. 68 1. 3–9].

The issues here presented are:

1. Were defendants' actions in selling and otherwise making electronic decoders available to Porter Cable subscribers a violation of the laws of the United States?

2. Were defendants' actions in selling and otherwise providing unauthorized decoder boxes to Porter Cable subscribers a violation of the laws of the State of Indiana, which provide relief in the form of treble damages and attorney fees for such violation.

## II.

■ Defendants actions in selling and otherwise making electronic decoders available to Porter Cable subscribers is a violation of Section 605 of the Communications Act of 1934, 47 U.S.C. § 605. That act provides, in pertinent part:

> [N]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto;
> . . . .

*Id.* The Courts have recognized the existence of a private right of action under Section 605. *Chartwell Communications Group v. Westbrook*, 637 F.2d 459, 466 (6th Cir.1980); *Reitmeister v. Reitmeister*, 162 F.2d 691, 694 (2d Cir.1947).

Further, Section 605 has served as the basis for injunctive relief in cases almost identical to the present one. In *Chartwell Communications Group v. Westbrook*, the operator of an over-the-air subscription television service sued to enjoin the defendants from selling equipment that would enable non-subscribers to receive the plaintiff's programs. *Chartwell*, 637 F.2d at 460–62. The *Chartwell* court noted that "Section 605 protects radio communications, (which include television communications, ...) from unauthorized reception, interception, divulgence, publication, etc." *Id.* at 462. The court held that selling decoders constituted assistance to third parties in receiving communications to which they were not entitled. *Id.* at 466. These activities were found to be a violation of the Communications Act. *Id.*

A similar result was reached in *National Subscription Television v. S & H TV*, 644 F.2d 820 (9th Cir.1981). The owners and operators of a subscription television service sued the makers and distributors of decoding devices which were not authorized by the service. *Id.* at 821. The decoding devices enabled television sets to decode and unscramble the services' encoded and scrambled signals, without the use of a decoder leased from the service. *Id.* The court held that the distribution of unauthorized decoding devices violated 47 U.S.C. § 605. *Id.* at 826. Thus, in this case, defendants' actions of selling and making available decoding devices to Porter Cable subscribers was a violation of the laws of the United States, namely 47 U.S.C. § 605.

## III.

As was stated in the pleadings, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because defendants' actions are in violation of a federal statute, specifically 47 U.S.C. § 605. In addition, defendants' actions are a violation of state law, specifically Indiana Code Sections 35–43–5–3, 35–43–4–3, and 34–4–30–1. These specific state statutes provide for additional relief for plaintiff in this case, namely attorneys fees and treble damages. This Court has jurisdiction to hear plaintiff's claim as to the defendants' violation of state law under the doctrine of "pendent jurisdiction".

■ Pendent jurisdiction exists whenever there is a claim "arising under [the] Constitution, the laws of the United States, ..., and the relationship between that claim and the state claim permits the conclusion that the entire action before the Court comprises but one constitutional 'case'". *United Mine Workers of Amer-*

**4**

*ica v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *See also Uptown People's Community Health Services Board of Directors v. Board of Commissioners of Cook County*, 647 F.2d 727 (7th Cir.1981). The state claim must arise out of the same nucleus of operative fact as the federal claim. *Uptown*, 647 F.2d at 732. Pendent jurisdiction exists where a plaintiff would be expected to try both state and federal claims in one judicial proceeding. *See Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *Uptown*, 647 F.2d at 732. The requirements for pendent jurisdiction are met in the present case. Defendants' same actions violated both federal and state law.

Indiana law specifically prohibits the use of unauthorized decoder boxes by cable subscribers or others. Indiana's Deception Statute states in pertinent part:

[a] A person who:

. . . . .

(6) With intent to defraud another person furnishing ... cable TV service, ... avoids a lawful charge for that service by scheme or device or by tampering with facilities or equipment of the person furnishing the service;

. . . . .

commits deception, a Class A misdemeanor.

I.C. § 35–43–5–3 (Burns 1979)

■ In addition to the specific prohibition under Indiana law, persons who use unauthorized decoder boxes are in violation of Indiana's Conversion Statute, which provides "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor." Ind.Code. § 35–43–4–3 (Burns 1979).

Both the deception and conversion statutes were discussed in *Moser v. State*, 433 N.E.2d 68 (Ind.App.1982), a case involving cable television. The defendant Moser had moved into an apartment and had been advised by another tenant that when the tenant had lived in his apartment, the television had been hooked up to cable. *Id.* at 69. Moser hooked the aerial wire in his apartment to his television. *Id.* Moser knew that the cable company's line had been illegally spliced. *Id.* He was never billed for cable television service. *Id.* Moser was convicted of criminal conversion for obtaining cable television without paying for it, and without the consent of the company, Total Cable Television. *Id.* at 68.

The *Moser* court stated in a footnote that Moser was not charged pursuant to Indiana Code Section 35–43–5–3. *Moser*, 433 N.E.2d at 68 n. 1. The court, in the footnote, described that portion of the statute which was applicable to the unauthorized use of cable television service. *Id.* The footnote was presumably included because the Indiana Court of Appeals believed that defendant Moser was in violation of that statute as well.

■ In the present case, defendants violated Indiana's Deception and Conversion Statutes, since defendants provided the means whereby Porter Cable subscribers converted plaintiff's "property" and since defendants participated in a "scheme" whereby plaintiff would be defrauded and deprived of its due fee for cable service. Defendants knew that should purchasers use the unauthorized decoder boxes, which use was the most obvious reason for the purchase, such use would be illegal, since it would result in deception and conversion in violation of Indiana law. Defendants' actions were violative of Indiana's Deception and Conversion Statutes, since all who participate in an act or transaction which is a misdemeanor are liable as principles. *McDaniels v. State*, 185 Ind. 245, 113 N.E. 1004, 1006 (1916). *See Mitchell v. State*, 233 Ind. 16, 115 N.E.2d 595, 599 (1953); *State v. Sutherlin*, 228 Ind. 587, 92 N.E.2d 923, 925 (1950).

■ In the present case, defendants provided unauthorized boxes to cable subscribers for use, knowing that such use, in fact the only use for which such boxes were intended, would be illegal. [*See* Moyer, Depo., p. 54 1. 8–18]. In so providing, defendants violated Indiana's Aiding Stat-

ute, Ind.Code § 35–41–2–4 (Burns 1979), by aiding plaintiff's subscribers in committing offenses under Indiana's Deception and Conversion Statutes. By violating Indiana's Aiding Statute, defendants became guilty of violating Indiana's Deception and Conversion Statutes. Indiana Code Section 35–41–2–4 provides that: "[a] person who knowingly or intentionally aids, induces or causes another to commit an offense commits that offense even if the other person: (1) has not been prosecuted for the offense; (2) has not been convicted of the offense or (3) has been acquitted of the offense."

In another recent case, the Indiana Court of Appeals approved the application of this statute to a defendant who was charged with aiding in the commission of a misdemeanor, criminal mischief. *Tilton v. State*, 416 N.E.2d 870, 873 (Ind.App.1981). That case indicates that Indiana's Aiding Statute applies to misdemeanors as well as felonies. Thus defendants' actions, which actions aided in the commission of two misdemeanors under Indiana's Deception and Conversion Statutes, were in violation of Indiana's Aiding Statute. With respect to the deception statute, defendants, in the present case, aided Porter Cable subscribers in avoiding lawful charges for the viewing of premium cable channels. As defendant, Charles T. Moyer, stated in his deposition, by purchasing a decoder from him, basic cable subscribers could avoid the additional premium channel fees. [Moyer, Depo., p. 53 1. 10–15, p. 54 1. 19–25 & p. 55 1. 1–6]. Thus, defendants' actions violated Indiana Code Section 35–43–5–3, Indiana's Deception Statute. With respect to the conversion statute, defendants aided Porter Cable subscribers in converting plaintiff's property by providing plaintiff's subscribers with unauthorized decoder boxes. [Moyer, Depo., p. 8 1. 18–20 & p. 11 1. 5–8. *See* Orlo H. Jackson, Aff.]. These boxes enabled the subscribers to exert unauthorized control over plaintiff's property, thereby violating Indiana Code Section 35–43–4–3, Indiana's Conversion Statute. Thus, whether defendants are principles in the commission of misdemeanors or whether defendants have violated Indiana's Aid-

ing Statute, the result is that defendants violated both Indiana's Deception Statute and Indiana's Conversion Statute.

With respect to damages in this action, both Indiana Code Sections 35–43–4–3 and 35–43–5–3 are criminal statutes. However, the Indiana legislature has provided that they may be used as the basis for imposing civil liability. The Indiana Code provides that "[i]f a person suffers a precuniary loss as a result of a violation of I.C. 35–43 (35–43–1–1—35–43–5–5) he may bring a civil action against the person who caused the loss for: (1) an amount equal to three [3] times his actual damages; (2) the costs of the action; and (3) a reasonable attorney's fee." Ind.Code § 34–4–30–1 (Burns Supp.1982). In order to impose civil liability under the statute, it is not necessary for the defendants to be convicted in a criminal case. *Americar Leasing, Inc. v. Maple*, 406 N.E.2d 333, 335 (Ind.App.1980).

In addition to the damages requested under state law claims, which are enumerated in Indiana Code Section 34–4–30–1, plaintiff is entitled to permanent injunctive relief under both federal and state law claims. As a requisite to the granting of injunctive relief, plaintiff must demonstrate that he has no adequate legal remedy. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). An adequate legal remedy has been defined as a "remedy which is plain and complete and as practical and efficient to ends of justice and its prompt administration as remedy in equity by injunction." *Local Union 499 of International Brotherhood of Electrical Workers, AFL–CIO v. Iowa Power and Light Co.*, 224 F.Supp. 731, 738 (D.Iowa 1964). The legal remedy may not be adequate where damages would be speculative, since the amount of damage is difficult or impossible to measure, *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 584–85, 72 S.Ct. 863, 865, 96 L.Ed. 1153 (1952); *International Brotherhood of Electrical Workers*, 224 F.Supp. at 738; *11 Wright & Miller Federal Practice and Procedure § 2994 (1973)*, or where the plaintiff could obtain legal relief

**6**

only through multiple actions, *Reed Enterprises v. Corcoran*, 354 F.2d 519 (D.C.Cir. 1965); *11 Wright & Miller Federal Practice and Procedure § 2994.*

■ In the present case, defendant, Charles T. Moyer, has stated F.A. Distributors may be in the business of selling decoders in the future, [Moyer, Depo., p. 68 1. 3–9], just as it had been in the past, [Moyer, Depo., p. 8 1. 18–20 & p. 11 1. 5–8. *See* Orlo H. Jackson, Aff.]. Hence, to effectively stem defendants' illegal actions, plaintiff would be forced to sue defendants each and every time they sold a decoding device to one of plaintiff's subscribers. This prospect of multiplicity of suits dictates that plaintiff has no adequate legal remedy in this matter and should be granted permanent injunctive relief.

Therefore, in light of the foregoing memorandum, the pleadings, the previously-filed affidavits, the affidavit of Orlo H. Jackson, filed in support of the Motion for Summary Judgment, and exhibits and the depositions, this Court now grants plaintiff's Motion for Summary Judgment, issues a permanent injunction, enjoining defendants from selling decoder boxes to Porter County Cable Company subscribers in the future, and sets a hearing on the issue of damages, including reasonable attorney fees.

SO ORDERED.

Hearing on damages is set for the 3d day of March, 1983 at 1:30 o'clock P.M. in South Bend, Indiana.