**AGRISTOR LEASING, a Wisconsin partnership, Plaintiff,**

v.

**Marvin D. McINTYRE, Robert N. Wiley, McIntyre & Wiley Auction & Sale Management Service, and Better Bilt Storage, Inc., Defendants.**

**BETTER BILT STORAGE, INC., Cross–Claim Plaintiff,**

v.

**Marvin D. McINTYRE, Robert N. Wiley, McIntyre & Wiley Auction & Sale Management Service, Cross–Claim Defendants.**

**No. IP91–274C.**

United States District Court, S.D. Indiana, Indianapolis Division.

April 1, 1992.

188

Joseph W. Murphy, Klineman, Rose, Wolf & Wallack, Indianapolis, Ind., for plaintiff.

Kent M. Frandsen, Parr, Richey, Obremskey & Morton, Lebanon, Ind., Briane M. House, Kightlinger & Gray, Indianapolis, Ind., for defendants.

BARKER, District Judge.

Plaintiff AgriStor Leasing ("Agristor") is a Wisconsin partnership engaged in the lease and sale of grain storage equipment to farmers. On approximately June 28, 1979, Agristor entered into an Agricultural Equipment Lease Agreement with Floyd and Janet Harmeyer for the lease of various pieces of agricultural equipment. After several years of such leasing, the Harmeyers decided to purchase this equipment and signed a Retail Installment Contract

with Agristor. Under the terms of this contract, Agristor retained a security interest in the equipment, and the Harmeyers were prohibited from selling or disposing of the equipment without prior written consent from Agristor. Agristor perfected its security interest by filing U.C.C. financing statements and amended financing statements on September 24 and 28, 1987, in the recorder's office in Wayne County, Indiana, the county in which the equipment was erected and affixed.

The Harmeyers subsequently encountered financial troubles and engaged defendant McIntyre & Wiley Auction & Sale Management Service ("McIntyre & Wiley") to conduct an auction sale of their property. McIntyre & Wiley is a partnership comprised of defendants Marvin McIntyre and Robert Wiley.

McIntyre & Wiley conducted this auction at the Harmeyer's farm on February 10, 1990. Virtually all of the equipment subject to Agristor's security interest was sold to third parties, including defendant Better Bilt Storage, Inc. ("Better Bilt"), which paid $23,000.00 for certain pieces of the collateral. Better Bilt is an Ohio corporation which deals exclusively in used farm equipment. The plaintiff alleges that after the auction, Better Bilt dismantled and removed the equipment it had purchased from the Harmeyers' farm and then sold the equipment to third parties. Complaint, para. 22.

At the time of the auction, the Harmeyers still owed Agristor more than $36,000.00 on the Retail Installment Contract. The parties disagree about what consent, if any, Agristor gave to the Harmeyers in advance of the sale. None of the proceeds from Better Bilt's purchase were remitted to Agristor, however. The plaintiff claims that McIntyre & Wiley deducted a commission and then paid the balance of the Better Bilt proceeds to the Harmeyers,[1] who in turn used the money to pay other creditors or to meet business operation expenses.

1. McIntyre, Wiley, and McIntyre & Wiley claim that they did not actually receive the purchase money from Better Bilt.

The Harmeyers eventually filed a Chapter 11 bankruptcy and scheduled their indebtedness to Agristor as an unsecured obligation.

Agristor maintains that it learned of the auction several months after it occurred, and that it demanded of McIntyre & Wiley and of Better Bilt the return of its collateral. Its demands unheeded, Agristor initiated this lawsuit. Agristor alleged that subject matter jurisdiction existed

> premised upon grounds of diversity [of citizenship,] and AgriStor alleged damages in excess of the $50,000.00 jurisdictional amount required as a prerequisite to such an action under 28 U.S.C. § 1332(a). AgriStor's damage allegations, in turn, were premised upon an asserted entitlement to a recovery under I.C. § 34-4-30-1 which allows persons who suffer pecuniary losses as a result of certain crimes, including criminal conversion, to recover treble damages.

Agristor Leasing's Response to the Summary Judgment Motions of McIntyre, Wiley, and McIntyre & Wiley and the Partial Summary Judgment Motion of Better Bilt Storage ("Agristor's Response"), p. 4.

Currently before the court are McIntyre, Wiley, and McIntyre & Wiley's motion for summary judgment and Better Bilt's motion for partial summary judgment and to dismiss for lack of jurisdiction. The common premise of these motions is that Agristor cannot satisfy the $50,000 amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332(a).

## DISCUSSION

"The burden of establishing the amount in controversy is upon the plaintiff as he is the party seeking jurisdiction." *Srour v. Barnes,* 670 F.Supp. 18, 20 (D.D.C.1987).

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that ... the sum claimed by the plaintiff controls if the claim is apparently made in good faith.
>
> It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288-289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) (footnotes omitted).

In this case, the plaintiff has alleged an amount in controversy in excess of $50,000, and no argument has been made that this allegation was made in bad faith. However, the defendants do maintain that it is a legal certainty that the plaintiff cannot recover enough to satisfy the jurisdictional requirement.

The plaintiff in its complaint alleges that the defendants' conduct constituted criminal conversion, defined in I.C. 35-43-4-3 as follows: "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor." The parties are in apparent agreement that the $50,000 amount in controversy requirement would be satisfied in the case if and only if Agristor were entitled to have its damages for criminal conversion trebled pursuant to I.C. 34-4-30-1.

The defendants maintain that their conduct was not criminal conversion because it was not done knowingly or intentionally, and that therefore the treble damage provisions of I.C. 34-4-30-1 are inapplicable. Better Bilt claims that no mention of any security interest was made in the advertisement which Better Bilt received about the Harmeyer auction, and that "[a]t no time during the sale or after the sale was any mention made of a security interest held by any party in the equipment sold." Brief in Support of Motion for Partial Summary Judgment and Motion to Dismiss for Lack of Subject Matter Jurisdiction, p. 2. Agristor and McIntyre and Wiley disagree as to whether McIntyre and Wiley were told by Floyd Harmeyer of Agristor's security interest in advance of the auction. The court will examine the facts in the light most favorable to Agristor and determine if, even assuming that McIntyre and Wiley were told of Agristor's security interest, their conduct would not constitute criminal conversion as a matter of law.

The criminal conversion statute includes two levels of criminal intent, "knowingly" or "intentionally" and proof of either

will sustain a conviction. "Knowingly" is the lesser level of intent and is statutorily defined at IND.CODE § 35–41–2–2(b) (1982):

> "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."

Thus, in order to find a criminal conversion ..., the evidence, at a minimum, must support the conclusion not only that [the defendant] exerted unauthorized control over [the plaintiff's] property, but also that [the defendant] was aware of a high probability that this control was unauthorized.

*Midland–Guardian Co. v. United Consumers Club, Inc.,* 499 N.E.2d 792, 797–798 (Ind.Ct.App.1986), *reh. denied,* 502 N.E.2d 1354 (Ind.Ct.App.1987); *see also Moser v. State,* 433 N.E.2d 68, 70 (Ind.Ct. App.1982) ("the control of the property must be exercised with an awareness of the high probability that such control is unauthorized.").

The facts in this case do not indicate that the defendants knowingly or intentionally exerted unauthorized control over Agristor's property. Assume for purposes of analysis that McIntyre and Wiley and even Better Bilt had actual knowledge of Agristor's security interest by virtue of Floyd Harmeyer's having conveyed this information to them.[2] Nonetheless, no evidence suggests that any of the defendants had reason to believe that the proceeds from Better Bilt's purchase would not be remitted by the Harmeyers to Agristor to satisfy the security interest,[3] nor is there any evidence that the defendants were aware of the Retail Installment Contract provision requiring Agristor's prior approval of any sale of the equipment.

A useful comparison can be drawn between this case and *Lafayette Production*

*Credit Ass'n v. Wilson Foods Corp.,* 687 F.Supp. 1267 (N.D.Ind.1987), a case construing relevant Indiana law and presenting facts arguably more suggestive of criminal conversion than the facts in this case. Wilson Foods purchased hogs from debtor Nelson Farms, knowing that these hogs were subject to a security interest held by PCA. PCA had written to Wilson Foods to inform them of the security interest and of a joint check agreement between Nelson Farms and PCA whereby all hog sales were to be paid for by checks issued jointly to Nelson Farms and PCA. Even in light of these facts, the court granted partial summary judgment in favor of Wilson Foods on PCA's claim for civil damages for criminal conversion. *Id.* at 1269. Although the court did not extensively discuss the criminal conversion allegation, the court did analyze in depth PCA's claim for treble damages under I.C. 34–4–30–1 based on Wilson Food's alleged criminal mischief under I.C. 35–43–1–2(2), an offense which involves "knowingly or intentionally caus[ing] another to suffer pecuniary loss" by various means. Discussing the issue of causation, the court noted that it had:

> found that Wilson had notice of PCA's rights to the Nelson Farm hogs. Finding that Wilson was 'carelessly indifferent' to the true ownership of the hogs is very different from finding that Wilson knowingly or intentionally *caused* PCA's loss. In contrast to the abundant evidence regarding Wilson's knowledge of Nelson's ownership, the court [found] no direct evidence to establish that Wilson knew Nelson would not repay PCA.... [T]he court may not impute Nelson's actions to Wilson.

*Wilson* at 1279.

Although this discussion occurred with respect to the issue of causation for a

---

**2.** The facts actually suggest that Better Bilt had at best constructive notice of such an interest by virtue of the U.C.C. filings. Agristor argues that Better Bilt had the requisite knowledge of unauthorized control by virtue of its failure to check for filings of security interests; however, Agristor does not offer any authority to demonstrate that Better Bilt had such a duty to check, or that its failure to meet this duty established the requisite knowledge or intent.

**3.** Indeed, McIntyre and Wiley maintain that the opposite was true: "We did not know that the Harmeyers would not use the sale proceeds to pay any existing encumbrances.... We did nothing to discourage the Harmeyers from using the sale proceeds to pay any existing encumbrances." Affidavit of Marvin D. McIntyre and Robert N. Wiley, para. 5 and 7.

statutory offense having different elements than criminal conversion, the same analysis could be applied to this case. Assuming that all of the defendants had actual knowledge of Agristor's security interest (as noted above, an assumption not supported by the record), nonetheless Agristor has not produced any evidence to suggest that the defendants knew or even had reason to suspect that the Harmeyers would not use the proceeds to satisfy their obligation to Agristor. Unlike these defendants, Wilson Foods even had knowledge of the joint check agreement between creditor PCA and debtor Nelson Farms. Finding that the knowledge or intent requirement of the criminal mischief statute had also not been established, the *Wilson* court noted:

> PCA only informed Wilson of PCA's interest in the Nelson Farms hogs and that PCA requested the issuance of joint checks for any purchase of those hogs. Wilson (as well as PCA) was aware of Nelson's efforts to refinance his hog operation. This evidence is insufficient to show that Wilson knew or intended that its actions in purchasing Nelson Farm hogs would cause PCA's pecuniary loss.

*Id.* at 1280.

Likewise in this case, since the defendants had no knowledge that the Harmeyers would not be using the proceeds of the sale of the equipment to satisfy the Agristor security interest, they cannot be said to have committed criminal conversion as defined by I.C. 35–43–4–3 by "knowingly or intentionally exert[ing] unauthorized control over" Agristor's property.

Agristor argues that "The whole purpose of filing a financing statement is to give notice to all the world that a secured party has a security interest in affected collateral." Agristor's Response, p. 8. Apparently, Agristor's position is that the only way to protect that interest is to impose treble damages on parties who fail to search for relevant findings. While the court is not commenting on what other remedies might be available to Agristor, Agristor's argument that the purpose for having filing statements would be undermined were not treble damages imposed is both unsupported and unpersuasive. While the imposition of treble damages in situations such as this would undoubtedly create a strong incentive to check for filings, Indiana cases do not suggest that this was a purpose for which the criminal conversion statute combined with I.C. 34–4–30–1 was intended, and it is not this court's role to apply such an expansive definition of criminal conversion. "The Indiana Supreme Court has determined that statutes which are punitive in nature are to be strictly construed under application of I.C. 34–4–30–1." *Wilson*, 687 F.Supp. at 1279; *see also Midland–Guardian*, 499 N.E.2d at 801 (same).

### CONCLUSION

Since the court has concluded that the defendants' conduct does not constitute criminal conversion as that term is defined by I.C. 35–43–4–3, the treble damage provision of I.C. 34–4–30–1 is not available to the plaintiff. Without treble damages, it is clear to a legal certainty that the plaintiff's complaint fails to satisfy the $50,000 amount in controversy requirement. Accordingly, the plaintiff's complaint is dismissed for lack of subject matter jurisdiction.

It is so ORDERED.